In the Matter of the Accounting of GERTRUDE R. KLAUSNER, as Executrix of EMMA I. KLAUSNER, Deceased.

Surrogate's Court, Broome County, March 16, 1948.

Thomas H. Fogarty for petitioner.

Ray T. Hackett for Edward H. Klausner and others, and as special guardian for Edward H. Peterson and others, infants, respondents.

PAGE, S.   A set of five specific objections to the account of the executrix has been filed and testimony and other proofs in relation to each of the same respectively adduced.   These objections will be examined and determined in the order in which they are stated in identical answers filed by the special guardian as such and as attorney for other respondents, as follows:

The first is an objection to an expenditure made by the executrix in the total sum of $270 to Lock-Tite Roofing Company in payment for insulation of the attic of a house located on real property of which said deceased died seized.   This expenditure, it is contended, was for the purpose of an unauthorized improvement to real property, as distinguished from necessary repairs.

Elmer J. Meloche, of Binghamton, New York, an able and experienced real estate expert who had examined the premises, was called by the claimant-executrix.   His uncontradicted testimony is to the effect that this particular item, consisting of an installation of insulation, corrected a pre-existing condition which had affected the comfortable habitability and, consequently, desirability and market value of the premises.   The

expenditure, according to his testimony, was not strictly a capital improvement. It partook of the nature of both a capital improvement and a necessary repair. According to the testimony of this witness, it enhanced the value of the property by $500 at an expenditure of $270, a sum not in excess of current costs at the time the work was done. It was otherwise shown that the property was actually sold for the amount of the full fair market value as thus enhanced. There does not seem to be any serious question but that this expenditure was incurred by the executrix in good faith and the evidence is clearly to the effect that it resulted in no loss, but rather a gain, to all the parties interested in the estate.

Even if this item should be classified as a capital improvement, there would still remain equitable considerations of which account must be taken in relation to the position of the executrix in making the expenditure therefor. (See *Matter of Schummers,* 210 App. Div. 296, affd. 243 N. Y. 548.) In that case it appears that the circumstances were such that an investment could not be justified as within the ordinary power of management and control of a legal representative. However, the court considered the injustice of surcharging the executor. The equities were such that no surcharge should be made. This was true mainly because the estate had suffered no injury but had derived a benefit and the improvement had been made in good faith. Such findings of fact are as adequately supported in the present case.

On the basis of the considerations above reviewed, this particular objection should be dismissed.

The second objection to the account herein is in relation to an item of $337.65 as the same appears in schedule D. This sum represents payment by the executrix of an indebtedness allegedly due her brother, Karl R. Klausner, by reason of a loan of $200 he made to his mother on or about October 1, 1934. An instrument in writing, which has been rather loosely denominated as a " note ", was executed and delivered by the testatrix to her son Karl. Among other things this instrument recited that the principal sum would bear interest at the rate of 5½% per annum. Its due date was upon the death of the testatrix, but nonviolative of subdivision 1 of section 31 of the Personal Property Law because in writing duly subscribed.

Although this item was allowed and paid by the executrix, objectants are not thereby precluded in seeking to question its validity. See second paragraph of section 210 of the Surrogate's Court Act.

The basis of the objection is that this instrument was contained among the personal effects of the deceased, thus raising a presumption that the obligation represented by it had been discharged during her lifetime.

Attempt was made by the executrix to rebut the presumption arising because of this circumstance. This consisted chiefly of testimony by her brother Karl to the effect that the instrument in question was turned over by him to his mother just before he went into the United States Army in 1943, with the understanding that she would keep it for him. In the event he failed to return from the service, she was at liberty to do whatever she wanted to about it but, otherwise, the obligation would remain valid and subsisting.

Strenuous objection was made to the qualification of Karl R. Klausner to testify because of the provisions of section 347 of the Civil Practice Act. Ruling upon this objection was reserved and the testimony received subject to motion to strike it out.

It appears to be, and to have been for many years, definitely settled in New York that former section 829 of the Code of Civil Procedure, and the later section 347 of the Civil Practice Act, are inapplicable in any case where the testimony of a *paid* creditor of the deceased is proposed to be adduced in evidence. As good a case as any on this point is *Laka* v. *Krystek* (261 N. Y. 126, 130, 131 [1933]) where authorities are correlated in relation to the nondisqualification of a paid creditor. Such a witness ordinarily has no interest which disqualifies him even though he may have a practical interest to seek to testify in such a manner and to such an effect as would support a judgment tending to shield him from some other claim being asserted against him such as for reimbursement of the payment he had received. As stated in the opinion of Judge CRANE in the last above-cited case: " The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment, or, that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest and not an interest uncertain, remote or contingent. (*Hobart* v. *Hobart,* 62 N. Y. 80, 84.)  *  *  * And finally in *Franklin* v. *Kidd* (219 N. Y. 409, 412), it was held that the gain or loss must result to the witness from the judgment in its direct or immediate operation: ' One is not " a person interested in the event " under section 829 of the Code merely because the outcome may save

him the trouble of another lawsuit. * * * To make out an interest in the event, the judgment must not merely leave open the possibility of another action. It must be evidence in the other action, and evidence adverse to the witness.' (See, also, *Wallace* v. *Straus,* 113 N. Y. 238, 242.)''

As to the contention that the adjudication in this proceeding would constitute *res judicata* or, at least, evidence in some possible subsequent action or special proceeding against the paid creditor, see section 757 (Vol. 1) New York Surrogate Law and Practice by Bradford Butler, and cases there cited to the effect that a decree is not *res judicata* or binding upon a party in a subsequent proceeding who was also a party in the previous proceeding wherein the adjudication in question was made, unless such party's status or capacity is no different in the subsequent proceeding. Here the witness, Karl Klausner, is a party solely as one of the legatees and devisees. In a subsequent action or proceeding, involving his right to retain payment of his claim, which would present an issue as to the validity of the instrument in question, he would be a party in an entirely different capacity.

There was no impeachment of this witness. There was nothing about his deportment indicating any inherent improbability in his testimony or tending to impugn his veracity. There was no contradictory evidence. Moreover, on the point that the obligation had not been extinguished, he was corroborated by the testimony of two neighbors and friends of the deceased who, after his return from service overseas, testified to having heard the deceased state repeatedly that she was anxious and concerned in regard to the payment of '' Karl's note ''. It nowhere appears that this reference could have been to anything other than the instrument in question. The contention made that the failure of the payee, Karl R. Klausner, to obtain physical possession of the note from his mother during the relatively short period of time between his return from overseas and her death is not enough reasonably to offset the demonstration in support of the propriety of the executrix' act in paying this indebtedness.

It appears that the authority is absolute that the objection to the qualification of the witness here in question under section 347 of the Civil Practice Act is not tenable. By his corroborated testimony, the presumption of discharge of this obligation of the estate is rebutted. The objection under section 347 of the Civil Practice Act must be overruled and exception

allowed. The considerations of fact and law in relation to this second item are such as to necessitate the conclusion that the pleaded objection thereto must also be dismissed.

The third item concerning which objection to the account of the executrix has been made herein is the first of three items contained in schedule G. The item in question at this point is a claim by the executrix that in 1943 she personally paid the cost of painting a house known and designated as No. 37 Bevier Street, Binghamton, New York. This was a house which the testatrix had owned for some years previous to 1943, and which she continued to own thereafter and of which she died seized. The amount claimed is a total of $183.80 made up of the sum of $125 paid to one Tracy Dewey, painter, the balance being cost of paint and other materials in the sum of $58.80. Receipts showing such payments made by claimant-executrix were introduced as exhibits in evidence.

Objections to this item are: " (1) That any and all moneys due and owing on this account to said executrix were paid to her by the deceased prior to her death; (2) That said payment was excessive in amount and was an unreasonable charge for the type of services rendered and materials furnished at that particular time and place ".

Neither of these grounds is sustained by any evidence. Although under the first ground payment is alleged, the record fails to show any evidence whatever contravening testimony (concerning which no objection as to the qualification of the witness was made) by the executrix that she never has been reimbursed this amount or any part thereof. Thus, there is an apparent failure on the part of objectants to sustain their burden of evidence in relation to the affirmative defense of payment. As to the second ground of objection, the uncontradicted testimony of the painter by whom the work was done established that the costs thereof, both for labor and materials, were not in excess of the current costs for similar labor and materials in the year 1943, according to rates and prices of that time.

Some question was raised as to the conditions under which the testatrix understood the painting work was to be done. This consisted chiefly in testimony to the effect that one of her sons had agreed to pay for the painting in question, but it is shown that he never did so. That the painting was undertaken with the knowledge and consent of the testatrix is shown by an exhibit consisting of a memorandum or agreement in relation

thereto dated September 24, 1943, and bearing her signature together with that of the painter by whom the work was done. No issue as to this expenditure's having been gratuitously imposed was raised by the pleadings but, within the pleadings or otherwise, there has been no reason shown to deny reimbursement to the executrix of the full amount of this item.

Although a legal representative cannot pay himself during the course of administration as he would some other claimant, but must prove his claim on accounting, still the evidence in support thereof is not required to be any more than a fair preponderance. In respect to a disputed claim against a decedent's estate, however, whether of the legal representative or another, the trier of facts should scrutinize the evidence more carefully and critically. (See *Matter of Mason,* 134 Misc. 902, 904, and cases there cited.) Here this personal claim of the executrix has been validated by a fair preponderance of all the evidence bearing upon it. This item should be allowed to the executrix personally. Objection thereto is dismissed and she is hereby authorized to treat the same accordingly.

The fourth item to be considered is the personal claim of the executrix, Gertrude R. Klausner, based upon alleged services to testatrix as a registered nurse during three separate periods of illness. As shown by schedule G of the account, these periods were as follows: (1) May 12, 1943, to June 2, 1943, 21 days at $12 per day, $252; (2) June 25, 1945, to July 2, 1945, 8 days at $12 per day, $96; (3) January 14, 1946, to January 30, 1946, 17 days at $19 a day, $323; total $671.

Objection is made to this claim on grounds, in substance, as follows: (1) That the claimant-executrix was employed elsewhere during the periods in question, and (2) that the services rendered were not pursuant to a contract of hiring, but were gratuitously rendered.

During the course of the several adjourned hearings herein, the point was also raised that the testatrix was not ill, or at least not ill enough so that she required the services of a registered nurse during the first two of the periods of illness in question. This contention can be disposed of readily by giving proper consideration and effect to the testimony of the three attending physicians, by which it appears that the nursing services were necessary during each of the periods of testatrix' illness.

Although, ordinarily, benefits conferred imply a contract to pay a reasonable remuneration therefor, the inference is

otherwise in cases where the assistance is rendered by a member of the family or close relative. An old but direct case on this point is *Moore* v. *Moore* (3 Abb. Ct. App. 303, 312; 21 How. Prac. 211, 219–224). See, also, *More* v. *Shepard* (133 App. Div. 471). Some cases intimate that it is contrary to public policy to imply that a close relative rendering services is entitled to recover therefor (e.g., *Matter of Hughes,* 229 App. Div. 614, 616), but it is difficult to see why that is so. The better theory would seem to be because of the lack of a rational basis of a contractual implication in the case of help extended, e.g., by a child to his parents.

It is undoubtedly true that the claimant, being a daughter of the testatrix, is not assisted in supporting her burden of proof by readiness of a court to imply a contract. But she is entitled to a fair weighing of all the evidence in order to determine whether there is a preponderance thereof sufficient to show that the services were rendered pursuant to a contractual relationship. (*Matter of Hamilton,* 70 App. Div. 73, affd. 172 N. Y. 652.)

As to at least one of the periods of time during which nursing services were rendered, the first, the claimant has produced the attending physician, Dr. S. M. Allerton, who testified to the effect that the testatrix expressed the intention and desire to remain at her home and have her daughter, the claimant, as her nurse, thus avoiding going to the hospital, and stating to another witness that she intended to and would pay her as a registered nurse the same as if she were a stranger. There were five witnesses who testified as to the persistent concern expressed by the testatrix as to making payment to her daughter Gertrude for taking care of her as a nurse during her illness and for other species of indebtedness. None of these witnesses were seriously impeached in any way, and it seems difficult to discredit and disbelieve all of them, particularly in the absence of any contradictory testimony as to the testatrix having had this attitude.

As a combined effect of all of this demonstration it appears that the nursing services were rendered under such circumstances as to support the conclusion that, as far as the testatrix was concerned, she intended to and had agreed that, upon their rendition, she would pay for them.

Of course, the claimant herself was disqualified under section 347 of the Civil Practice Act to give any testimony tending to indicate what, if any, was the express understanding between

herself and her mother. The testimony indicates that, at the beginning of the rendition of all the nursing services in question, the testatrix had, in effect, submitted an offer to her daughter Gertrude which was capable of acceptance merely by performing the act or acts contemplated by the offer, thus developing a unilateral contract. Since this appears to have been the arrangement in the first instance, and there being nothing shown that can be regarded as having changed the situation thereafter, the presumption obtains that all three periods of the services were upon a similar or identical basis in this regard.

The sufficiency of the claimant's proof as to actual rendition of nursing services for the full periods claimed is questioned by objectants. Nurse's records made by the claimant and dated accordingly were offered in evidence. Objection was made to the receipt of these records on the ground that they are self-serving.

Against this contention attention was called to the provisions of section 374–a of the Civil Practice Act. Consideration of the legislative background of this section, as well as its specific provisions, shows clearly that the legislative intent was to break down most of the barriers to the introduction in evidence of records kept in the " regular course of any business ", provided that " it was the regular course of such business to make such memorandum or record at the time " of the act, transaction, occurrence or event in question. Such records are freely admissible upon compliance with these minimum foundational requirements.

However, authority is presented to the effect that, in applying section 374–a, the evidence must be " otherwise admissible ". (See *Poses* v. *Travelers Insurance Co.* (245 App. Div. 304 [1935, 1st Dept.].) Such an application of the statute would seem to bar the admission of records which are objectionable as self-serving. But the " otherwise admissible " qualification in this case is apparently dicta, and it is not clear what the court meant. A different view was stated in *Publishers' Book Bindery* v. *Ziegelheim* (184 Misc. 559 [1945, App. Term, 1st Dept.]) where it was determined that, under section 374-a of the Civil Practice Act, such record evidence is admissible " regardless of whether it is hearsay or self-serving ". This would seem to be a logical construction. If the entries were made by an employee lacking personal direct knowledge, they would be hearsay. Ordinarily they would also be " self-serving ". We

know that, even under the shop book rule, records were usually self-serving. The statute provides that such circumstances affect the record's evidentiary weight, not admissibility.

While an extended discussion of the statute may present a tempting thesis for an article in a law review, it is unnecessary to incorporate such a literary product in this decision. This is so because there is some question as to sufficient qualifications of the records. Doctors failed to positively identify them. The objection may be sustained and the records excluded. However, a proper evaluation of all the other evidence on the question of nursing services shows that there is no serious doubt that the claimant served substantially the full length of each period respectively as claimed.

However, the evidence would fall short of fully supporting the conclusion that a unilateral contract was formulated between the parties unless it can be fairly inferred that there was mutuality of intent. The manifestation on the part of the testatrix is strongly to the effect that she intended to and did make an offer to her daughter which could be accepted by performance. The question remains as to whether the latter's own intent at the time was to accept the offer by performance according to its terms or that she was entirely uninfluenced by the offer and rendered the nursing services quite independently thereof.

In the present case, the contention is made, and supported by some evidence, that the performance of the act contemplated by the offer did not, under the circumstances here presented, constitute acceptance. It appears that the executrix-claimant did not seek to collect from her mother during the latter's lifetime. But, as of that time, the circumstances were such as would naturally deter her from being insistent upon immediate payment. Also, the testatrix was short of funds. In view of all the circumstances, the showing that the claimant did not insist on immediate payment is far short of conclusive that she did not render the nursing services as an acceptance of the offer.

Although the claimant might not have accepted a similar offer from a stranger, or, in all probability would not have done so, that is not saying that she did not, by her acts, accept the offer from her mother. There is no evidence showing or tending to show that she has ever, except by silence, indicated any attitude inconsistent with having acted by way of acceptance of the offer. An intent to accept an offer, under the law of contracts, need not have been the *sole* motivation of acts performed

with knowledge of the offer and, apparently, in response thereto. (See Restatement, Contracts, Vol. 1, § 55, comment b).

The failure to promptly assert her claim went to the extent of having her attorney prepare a memorandum as to the affairs of the estate which was mailed to the other legatees, but mentioning no claim for nursing services, and, later, holding an extended conference with the other beneficiaries of the mother's will at one of which one of them stated that, if any of them had any further claim, " Now is the time to bring it up ", with the claimant saying nothing of claiming anything for nursing. It is contended by counsel for objectants that such reticence of claimant constituted an admission by her that there never was any contract in relation to her nursing services, and that her assertion thereof in the account was an " after-thought ".

However, this circumstance is offset by other circumstances surrounding the situation. It appears that the claimant was a creditor of her mother by reason of a $900 loan, secured by a bond and mortgage of the latter, but subject to being barred if the Statute of Limitations were to be raised against its recognition as a valid obligation of the estate. Because of this, even though she testified she thought her mortgage claim was valid, she could not help knowing parties opposing her might contest her mortgage. She, therefore, had a substantial motive in relation to the hope she doubtlessly entertained that, by avoiding friction insofar as she could, and by being conciliatory as she was in regard to a distribution of family household articles, despite her legacy thereof, she might be practicing a species of appeasement that would protect the estate from litigation and might prove to be more profitable to herself personally in the long run. There is nothing tremendously inconsistent, under the circumstances, about her believing she had a valid claim for nursing services but yet foregoing its assertion, awaiting developments as to what effect its possible total forbearance might have in effectuating other advantages. There exists no basis of equitable estoppel as against the claimant. No one changed his position or acted to his detriment in any way because of her tardy assertion of her claim. Similar situations are not at all unusual. In our common experience we often see people elect not to assert claims which they are conscious of possessing, with less motive than existed here.

Being obliged to act as the fact-finding functionary herein, I reach the conclusion that the record shows preponderating evidence to the effect that the nursing services were rendered

under a contract, pursuant to which the claimant is entitled to payment.

Counsel for objectants in his brief presents the further contention that any contract there may have been would be barred by provisions of section 31 of the Personal Property Law. This is one of the " Statute of Frauds " provisions, the one in relation to a contract which " by its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime ". The various Statute of Frauds provisions are rated as affirmative defenses to be pleaded and proved by the party asserting them. This defense is not embraced within the present pleadings either as originally filed or as amended pursuant to motion. But it is not necessary to determine this particular question on such a technical basis because the contract, in any event, does not fall within this provision. It is established beyond all question, and too elementary to require the citation of authority, that a contract which, within the contemplation of the parties, was possible of performance " within one year from the making thereof " does not fall within the statute even though performance of the contract actually turns out to have extended over a period of more than one year. There is no evidence tending to show that performance was to be extended until after testatrix' death.

Before finally disposing of this item, it is necessary to consider respondents' objection that the claimant was working elsewhere as a registered nurse during the various periods of time in question. This was quite well explained by the claimant and judicial notice may be taken of the wartime conditions and the effect this had upon employment of professional nurses. But, in any event, objectants are within their rights in questioning the value of the services. This is so whether claimant's theory is a *quantum meruit,* or a non-implied contract. See *Matter of Mason* (134 Misc. 902, 906) where it is clearly stated that " in either event only such recovery could be had as was commensurate with the value given and received ", together with citations of supporting authorities.

During the first two periods of time for which the nursing services are respectively claimed as $252 and $96, it has been shown that the claimant-executrix was elsewhere employed and lost no appreciable amount of time because of her employment by her mother. The superintendent and others in charge of her employment connection with industrial concerns seem

to have been sympathetic toward her and co-operated with her. However, the circumstances of her divided attention could not but have detracted from the nursing services here in question as they would have otherwise been. In view of this circumstance, together with the fact that the claimant made her home at her mother's residence and it appears from the evidence that there were some interludes in hours of engagement in nursing her mother, the decree herein should provide for payment of one-half the amount claimed for the first two periods, viz.: $174 instead of $348. As to the last period of illness, January 14, 1946, to January 30, 1946, it does not appear that the claimant was substantially engaged elsewhere, but did have a business connection to which she may have given some of her time and attention. Again, giving proper effect to all the evidence, my finding is that $12 per diem is allowable for the last period, viz.: $204 instead of $323, thus arriving at a total of $378, and this item is allowed to that extent.

The last objection to be considered is in relation to the third item in schedule G of the account. This is a claim by the executrix in her individual capacity for recovery of a loan in the sum of $900, together with interest thereon at the rate of 6% per annum from October 26, 1934. This claim is represented by a bond and mortgage made by testatrix to claimant, both dated October 26, 1934, and due November 1, 1939. There is no evidence that any payment of interest or installment of principal was ever made, or other basis for a finding that the obligation was not barred by more than six years' elapsed time previous to filing the claim.

The objection to this item is that the claim thereon is barred by the Statute of Limitations (Civ. Prac. Act, § 47–a). This affirmative defense has been pleaded by objectants and incontrovertibly established. The objection must be sustained and claim disallowed.

Settle decree in accordance with this decision on five days' notice.