In the Matter of the Estate of THORVALD MAIJGREN, Deceased.

Surrogate's Court, Monroe County, December 7, 1948.

*Earl F. Case* for Lincoln Rochester Trust Company and another, as executors of Thorvald Maijgren, deceased, petitioners.

*Thurston Corbett* for Therese K. Maijgren, claimant.

*Arthur V. D. Chamberlain* for Electro Surgical Instrument Co. and others, respondents.

WITMER, S. The executors of the will of Thorvald Maijgren, deceased, have petitioned this court for a determination of the ownership of 119 shares of the corporate common stock of the Electro Surgical Instrument Co., and for a construction of the will to determine the validity and effect of certain provisions in the bequests of testator's stock holdings in said corporation. Upon the hearing it appeared that the residuary legatees are interested in the construction question, but had not been cited. A supplemental citation was directed to issue to bring them in; and the construction question has been deferred until complete jurisdiction to consider that matter has been obtained. Since, in the first instance, the question of the ownership of the 119 shares of stock is an issue between the executors and the claimant widow, Therese K. Maijgren, the trial of that issue was completed.

Claimant, Mrs. Maijgren, claims to own 120 shares of stock of the Electro Surgical Instrument Co. by gift from the testator in January, 1930; and 119 of said shares are the shares in issue which respondents contend belong to the testator. Before considering whether the evidence establishes an *inter vivos* gift of the stock, a determination must be made of the questions con-

cerning the admissibility of certain exhibits, rulings upon which were reserved.

Respondents have offered in evidence certain pages of the corporate minute book of the Electro Surgical Instrument Co., Exhibit 6 for identification, and the corporation's Federal income tax report for 1930, Exhibit 13 for identification, and for 1947, Exhibit 14 for identification, and the corporation's State franchise tax return for 1947, Exhibit 15 for identification. The purpose of the offer is to show that testator always claimed to be the owner of the stock in question, despite the alleged gift in 1930. It is urged that under section 374-a of the Civil Practice Act these exhibits are admissible as records made in the regular course of business. Claimant contends that since these exhibits were prepared by testator or under his direction, they are self-serving, and hence inadmissible. The point is not without difficulty, but I am inclined to the view that these exhibits are admissible under said section 374-a of the Civil Practice Act. The section itself provides that the circumstances surrounding the making of the records affect their evidentiary value but not their admissibility, and the same principle should apply with reference to self-serving declarations. (See *Matter of Klausner*, 192 Misc. 790, 799–800.) Said exhibits are, therefore, received in evidence.

One other exhibit, Exhibit 12 for identification, was offered, and decision reserved. It consists of an unsigned, undated, typewritten memorandum. Respondents Wagner and Schoenhals, as legatees of all of testator's stock in the Electro Surgical Instrument Co., are interested parties and incompetent under section 347 of the Civil Practice Act to testify concerning transactions with the testator. They testified that this instrument was found after testator's death in his strongbox with a general release, signed by claimant, Exhibit 9. Without objection respondent Schoenhals then testified that she was testator's secretary, that about the year 1934, which was also the date of Exhibit 9, testator dictated to her and she typed Exhibit 12 for identification, and she then gave it to testator to place in his strongbox. Further testimony along this line was objected to by claimant, and the objection was sustained. The importance attached to Exhibit 12 for identification lies in the last sentence which reads: " The securities she held and the return of which was part of the agreement have never been returned to me." Respondents claim that the securities mentioned are the stocks in issue. Respondents then offered Exhibit 12 for identification

into evidence on the ground that the testimony which Miss Schoenhals gave before objection was made is sufficient to identify it and to support its admission. Claimant's attorney thereupon moved to strike out such evidence on the ground that the witness was incompetent to testify concerning such transaction; and decision was also reserved on such motion.

The motion to strike out such testimony must be denied. Testimony by a witness, incompetent under section 347 of the Civil Practice Act, which is given without objection, must be considered along with other proof in the case, the interest of the witness only bearing upon its weight. The failure to object amounts to a waiver of the disqualification. (*Ralley* v. *O'Connor,* 71 App. Div. 328, affd. 173 N. Y. 621; *Hickok* v. *Bunting,* 67 App. Div. 560; Richardson on Evidence [6th ed.], § 469, p. 405.) The question here is somewhat closer than that, however, since the motion to strike out the testimony was made before the close of the trial. Even in this situation, the prevailing rule is that the evidence, once received without objection, cannot later be struck out.

" The counsel may have been careless in permitting testimony to be given without objection, which, perhaps, would have been excluded if objected to; but this will not authorize the referee to strike it out after it has been received. * * * The utmost fairness should be observed in the conduct of their examination, and if the adverse party desires to object to transactions with a deceased, he must do so in season, and not wait till he learns what they are, and then, if they bear unfavorably on his case, strike them out." (*Quin* v. *Lloyd,* 41 N. Y. 349, 355; *Parkhurst* v. *Berdell,* 110 N. Y. 386, 393; *Dry Dock Sav. Inst.* v. *Harding,* 48 N. Y. S. 2d 389, 390 [App. Term, 1st Dept.].)

Upon the evidence supporting such exhibit is it admissible? The exhibit is not aided by section 374-a of the Civil Practice Act since it was not made in the regular course of business. If it were an admission against interest, it would clearly be admissible. (*Miller* v. *Silverman,* 247 N. Y. 447, 450; *Matter of Gallagher,* 153 N. Y. 364, 368.) This exhibit, however, is not against interest, but is self-serving. It is, therefore, inadmissible, and is excluded.

It should be added, however, that the testimony shows that the release, Exhibit 9, with which Exhibit 12 for identification was found, related to other securities, and that the stocks in issue herein were not known to nor discussed by claimant's attorney who negotiated the settlement in which the release, Exhibit 9,

was executed and delivered, until at least two years after the giving of the release, and were not a part of that transaction. Were Exhibit 12 received the court would hold that it relates to other securities and not to the stocks in issue; and the court holds that the general release, Exhibit 9, has no bearing upon the question of the stocks herein.

We thus come to the principal question: Did the testator make a completed gift of certain stocks to claimant? It appears that claimant's father founded the Electro Surgical Instrument Co., and that after his death his wife, claimant's mother, owned 120 shares of stock, represented by two certificates, one for 10 shares and the other for 110 shares. Between June 3, 1912, and July 10, 1913, claimant's mother gave these stocks to claimant, Therese K. Maijgren, and on the latter date they were reissued in claimant's name in two certificates as before. On April 20, 1914, claimant's certificate of 110 shares was cancelled and reissued in testator's name by certificate No. 22; her certificate of 10 shares was cancelled and reissued, 9 shares in testator's name by certificate No. 21 and 1 share in claimant's name by certificate No. 20. Claimant indorsed said certificate No. 20 over to testator, and all three certificates were held by him.

In January, 1930, testator sent all three of said certificates, representing 120 shares, to his wife, claimant, by mail with a letter in which he stated, in part, the following:

"For reasons well known to you I enclose herewith the 120 shares of capital stock of the Electro Surgical Instrument Company which you ' turned ' over to me. You can have these shares transferred at any time in your name or in any other name or names that you may designate at the company's office during office hours.   *   *   *

"In justice to the children, who have been told and made to believe that I have existed and prospered through underhanded methods and through your and your mother's bounty, they should be informed that their father is not a thief and be advised of the evidence and the ' restitution ' attached hereto."

The certificates Nos. 21 and 22, representing 119 shares standing in the name of testator, enclosed in said letter, were not indorsed by him, nor was any notation made on certificate No. 20 for the 1 share that it was reassigned to claimant. No stock transfer stamps were affixed to the certificates. These three certificates have been retained by claimant since that time. From 1936 until testator's death claimant made repeated demands and efforts to secure the indorsement of certificates Nos. 21 and 22 for 119 shares of stock for transfer to her name, without suc-

cess. Certificate No. 20 for the 1 share, which was issued in claimant's name, is not claimed by testator's estate or respondents claiming through the estate, and so no question is raised with respect to it.

Within a year or so after testator sent the stock to his wife, in a conversation with his son he stated that he had given the 120 shares of stock to his wife. The attorney who represented testator during the ten-year period during which demands were made from time to time for indorsement and transfer of the stock on the books of the company, testified without objection that testator had consulted him about the matter of indorsement, and asked if it were necessary for him to do it at once, and when told he could be compelled by legal action to indorse the stock, directed his attorney to advise claimant that he was considering the matter. Testator told his attorney and son that he did not want to indorse the stock because he did not want any interference in the operation of the corporation. In such statement he apparently overlooked the fact that one of the shares was standing in his wife's name as a matter of record. There were and are only 280 shares of the corporation's stock outstanding, and testator owned the other shares.

In 1947, testator created an *inter vivos* trust under an agreement to convey all of his stocks to the trustee. The trustee says that it received 160 shares of common stock of the Electro Surgical Instrument Co. under this agreement. Testator's attorney during this period testified without objection that he read over to testator the list of all the stocks which testator owned, which, under the trust agreement were to be transferred to the trustee, and that testator also took the list for checking and study, and then told his attorney that the list was complete. It shows 160 shares of stock of the Electro Surgical Instrument Co., and none of the 120 shares which testator sent to his wife in his letter of January, 1930, above mentioned was listed as owned by him.

In the 1930 Federal income tax return of the Electro Surgical Instrument Co., prepared in early 1931 and signed by testator as president, it was stated that testator owned 279 shares of its stock. It was apparently then recognized that claimant was the owner of record of the other outstanding share. In the 1947 Federal and State tax returns of the corporation, also signed by testator as president, it was stated that testator owned 280 shares of said stock, although the 1 share still remained of record in the name of claimant wife.

Neither the failure to affix stock transfer stamps to the three stock certificates (*Matter of Borst,* 129 Misc. 424, affd. 222 App.

Div. 707, affd. 248 N. Y. 556; *Matter of Mills,* 172 App. Div. 530, 538; *Matter of Downey,* 68 N. Y. S. 2d 407, 410) nor the failure to indorse them (*Miller* v. *Silverman,* 247 N. Y. 447, 450, *supra*; *Gilkinson* v. *Third Ave. R. R. Co.,* 47 App. Div. 472, 476) was fatal to the consummation of a gift *inter vivos* thereof. The question is simply, were all of the usual elements (See 2 Butler, New York Surrogate Law and Practice, § 1466) of a completed gift *inter vivos* present? Aside from the failure to indorse and affix stamps, the only element of gift which respondents claim was lacking is the intent to make an absolute and completed transfer of the legal or equitable ownership of the stock at the time testator mailed the certificates to claimant in January, 1930.

The burden of proof is upon claimant. Testator's letter of transmittal of the stock, admissible as an admission against interest, was quoted above in part. It shows delivery of the stock with the intent that claimant could have the certificates transferred to her name at will. It also shows intent to vest the title, equitable if not legal, to the stock in claimant, because testator wrote to his wife that " the children * * * should be informed that their father is not a thief and be advised of the evidence and the ' restitution ' attached hereto." The " restitution " was the revesting of the ownership of the stock in claimant. His intent at the time could hardly be more clearly expressed. Although failure to indorse the certificates has a bearing upon testator's intention at the time, the whole expressed purpose of the return of the stock, to wit, to remove claimant's ground for complaint against the testator and to show his children that he had not " existed and prospered through underhanded methods and through your [claimant's] and your mother's bounty " conclusively establishes his intention to make a presently completed gift in equity. Thus, if testator had died within a few days after the date of such letter, little doubt could be raised that the gift was complete. The books are full of reported cases embodying this principle. A good illustration is *Matter of Cohn* (187 App. Div. 392), which cites many cases on the subject.

The gift having been effectuated, it was irrevocable by testator. (*Ridden* v. *Thrall,* 125 N. Y. 572, 579.) His later refusal to indorse the certificates, whatever his reason, and his later entries in the corporate minute book and statements in the corporate tax reports indicating his ownership of the stock could not recall the gift. These items may have a bearing on the question of testator's intention when he wrote the letter in January, 1930, and returned the stock to claimant therewith. There are other rea-

sonable explanations, however, of such conduct, entries and statements. His dealings with the trustee of the *inter vivos* trust in the last years of life show that testator did not claim to be the owner of the shares represented by certificates Nos. 20, 21 and 22. Moreover, respondents make no claim to the 1 share, certificate No. 20. It had been indorsed by claimant to the testator prior to 1930 and was returned by him to claimant with the other 119 shares. The same intention applied to all of said shares.

The gift being complete in equity, claimant is entitled to have the necessary indorsement of the stock by testator's executors and its transfer upon the books of the Electro Surgical Instrument Co. (*Gilkinson* v. *Third Ave. R. R. Co.,* 47 App. Div. 472, 476, *supra.*) Although as between claimant and the corporation the question is an *inter vivos* matter, we are here making a complete determination of the issue, and for such purpose this court has full jurisdiction. (*Matter of Raymond* v. *Estate of Davis,* 248 N. Y. 67.)

Submit decree accordingly.