320 S.W.2d 478 (1959)
In the Matter of the ESTATE of Olin KIES, Deceased.
R. E. MOULTHROP, Administrator, Appellant,
v.
Sam KIES, Respondent.
No. 46638.
Supreme Court of Missouri. Division No. 1.
January 12, 1959.
Rehearing Denied February 9, 1959.
*479 E. L. Redman, Albany, for appellants.
C. C. Ross, Bethany, for respondent.
VAN OSDOL, Commissioner.
R. E. Moulthrop, administrator c. t. a. of the estate of Olin Kies, instituted a proceeding in the Probate Court of Harrison County for discovery of assets thereby invoking the citation of Sam Kies, son of Olin Kies, under Sections 473.340-473.350, RSMo 1957 Supp., V.A.M.S. The discovery inquiry involved a certificate, No. 555, representing three hundred thirty-nine shares of stock of The First National Bank of Bethany of the value of $25,425. The acting Judge of Probate (now deceased) disqualified, and the cause was certified to the Circuit Court where trial was had without a jury upon the issues raised by the interrogatories propounded and the answers thereto. In his answers to interrogatories Sam Kies, hereinafter sometimes referred to as "defendant," had stated in effect that the father Olin had transferred the certificate by gift inter vivos to him, the son Sam. At the conclusion of the trial, the circuit (trial) court found and adjudged the "Certificate #555 representing 339 shares of stock in The First National Bank of Bethany * * * and now in the possession of the said Sam Kies is rightfully his property and that it is not any property belonging to the estate of Olin Kies, deceased." The administrator was ordered to "make the necessary endorsement on the above described certificate of stock * * * as shall be necessary to complete the records * * * of transfer of said stock to the said Sam Kies." The administrator has appealed.
Appellant administrator, hereinafter sometimes referred to as "plaintiff," contends the trial court erred in finding and entering judgment for defendant. It is asserted that the evidence does not establish that the father Olin ever actually delivered the certificate to defendant. It is argued that the evidence is consistent with the theory that the son, defendant Sam, came into possession of the certificate after the father's death, and inconsistent with defendant's theory of a gift; and that, moreover, the certificate was not endorsed by the father who was the person appearing by the certificate to be the owner of the shares represented thereby, and no other and separate document containing a written assignment had ever been signed by the father, the person appearing by the certificate to be the owner. Section *480 403.050, RSMo 1949, V.A.M.S.; Uniform Stock Transfer Act, 6 U.L.A., § 1. Other contentions go to the competency of witnesses, and to the propriety of the circuit court's order requiring the administrator to endorse the certificate.
The principal and decisive question here isWas there or was there not a gift of the shares of stock, represented by the certificate, from the father Olin to the son Sam? In determining the question in this case, tried below on the facts without a jury, we shall examine the evidence anew and shall reach our own conclusions as in actions of an equitable nature. The trial court's judgment will not be set aside unless clearly erroneous, and we shall give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Section 510.310, subd. 4, RSMo 1949 V.A.M.S.
Generally, one claiming a gift has the burden of proving the gift by convincing evidence, and in establishing a gift the evidence must show a delivery with the intent on the part of the alleged donor to pass title immediately and to relinquish all control. In re Petersen's Estate, Mo.Sup., 295 S.W.2d 144.
Olin Kies, of advanced age at the time of his death, March 27, 1956, was a retired farmer. He had been president of The First National Bank of Bethany since its organization in 1906. He had resided on a farm one mile east of Bethany, and his son Sam resides on a farm six miles farther to the eastward. Olin was survived by his widow; a son Dorris; the son Sam, defendant herein; and a grandson Doyle, a son of a deceased son of Olin.
February 28, 1945, Olin had made a will in which he bequeathed and devised a life estate in all of his property, which included sixteen hundred acres of land, to his wife, with devise of remainders in described parcels of land to his sons and grandson, and to a great-granddaughter Phyllis; and the residue of his estate after the widow's death was to be divided equally between the sons and the grandson. No executor was designated.
Olin Kies had been active in the bank, and in 1954 owned three hundred fifty-two shares of bank stock. In that year he sold thirteen shares to James E. Harper, who has been vice-president of the bank for thirteen years. Certificate No. 526, representing the three hundred fifty-two shares was transferred by endorsement and cancelled, and the new certificate, No. 555, representing the three hundred thirty-nine shares in controversy here, was issued to Olin Kies, January 9, 1954.
The son Sam and his wife Myrle testified that Sam had helped his father look after his farms and had assisted him in bank duties. The son was field representative of the bank.
In the afternoon of March 26, 1956, defendant Sam and his wife Myrle had accompanied Olin to Bethany. Olin and Sam attended a bank meeting and, after the meeting, Sam and his wife, in their automobile, took Olin to his home.
Defendant testified that when he started to leave the father's home, the father "reached in his pocket and took out the envelope (assertedly containing Certificate No. 555) and gave it to me." The envelope was sealed and there was written thereon, "Olin Kies to Sam Kies" in Olin's handwriting. After the witness, defendant Sam, had testified at some length, the trial court, upon objection on the ground that the question called for an answer "as to a business transaction between him (and) another person who is now deceased and he is incompetent to testify," excluded the testimony of defendant relating to the conversation at the time. In our examination of the record we find no other objection interposed as to the competency of defendant as a witness. Defendant's wife Myrle was not a party to the cause of action in issue, or a party to the proceeding.
*481 Myrle, wife of Sam, testified as did her husband that Olin gave Sam the envelope as they were driving to Olin's home from the bank. She testified that Olin said, "`Sam, you have helped me over a period of a number of years in the bank,' and he said, `I want you, I expect you to take my place some day and I want you to have this stock.' He said anything further that was necessary (`to convey that stock certificate') he would see to it later. * * * And he died (a suicide) the next day."
Doyle Kies, grandson of Olin, testified that he and his uncles, Dorris and Sam, and plaintiff were in attendance at the office of the probate judge on April 2, 1956. The acting probate judge was making inquiry relating to the value of Olin's estate to determine the amount of the administrator's bond. Doyle testified that Sam said Olin had "`$30,000 worth of stock, and about $3,000 in cash and that is all that I know of. The rest in a joint account with my mother.'" Dorris testified in substance as did Doyle. Plaintiff administrator testified that Sam said "there was about $3,000 he thought in The First National Bank in his father's name, and that he (the father) had some shares of stock in The First National Bank and that was all he knew that he owned. Those are practically his very words. * * * I don't remember exactly about the number of shares. My best recollection is that Sam said there were 352 shares but I can't find any specific evidence to say that I couldn't be wrong about the number of shares. * * * In any event, I did ask him about the value. * * * He said, `$30,000 would cover it all.'"
Defendant Sam testified of the meeting at the office of the judge of probate. He said that he, his brother Dorris, and the nephew Doyle had met with plaintiff at the office of the judge of probate; that it was there agreed that plaintiff should be appointed administrator; but there was no conversation relating to the amount of the administrator's bond, or "the value, and nature, extent or kind of property that he (Olin) had when he died."
The administrator's bond was fixed at $35,000, and the bond was provided with corporate surety. See Section 473.157, RSMo 1957 Supp., V.A.M.S., providing that where a corporate surety bond is provided the judge or clerk of the probate court may fix the bond in an amount not less than the actual value of the personal property of the estate.
James E. Harper, vice-president of the bank, testified that Olin was an efficient and capable business executive and was familiar with the steps necessary to the transfer of title of corporate stock. The witness was one of the appraisers of the estate, and was present when Olin's small lock box, which had been kept in the vault of the bank, was opened and the will procured therefrom. Defendant Sam had produced the key. The witness said it was quite possible that Sam went to his mother's house to get the key. It is inferred that, other than the will and one hundred dollars in currency, the contents of the lock box consisted of insurance policies and other "papers" of no importance to us here. The shares of stock in controversy were not appraised. Something like a week or two after the appraisement, defendant Sam produced the certificate, No. 555; presented it to the witness for transfer; and said his father Olin had given it to him.
In rebuttal, defendant testified that he and his brother Dorris had agreed to meet James E. Harper at the bank to open the lock box and "I stopped at my mother's house and got the key." Also in rebuttal defendant's wife, Myrle, testified there definitely was ill-feeling between the brother Dorris (and inferentially Doyle) and Sam. They were friendly toward Sam"Just when it was necessary. * * * There was dissension in the family and if they ever favored Sam in anyway there was always a reason. That is the bottom of the whole thing, the whole deal." Olin and Sam worked together on the farm. Sam *482 was in the bank and helped Olin there for "must have been around thirty years." Doyle and Dorris worked together.
In answer to an interrogatory propounded by plaintiff, defendant had stated that he did "not have any written evidence that a transfer of such corporate stock was made to him by Olin Kies, deceased, during his lifetime * * *." In explaining this answer, defendant testified he did not have in mind the writing"Olin Kies to Sam Kies"when he made answer. And defendant's wife Myrle testified that the stated language written on the envelope was first called to the attention of defendant's counsel in the morning of the day of the trial.
Considered alone and giving full credence to the testimony of defendant and his wife (and assuming the envelope and writing thereon"Olin Kies to Sam Kies" did not amount to a separate document containing a written assignment of the certificate, No. 555, within the meaning of Section 403.050, supra) such testimony tending to show that Olin delivered to Sam the certificate, symbolic of the stock, contained in the envelope with the quoted writing thereon in Olin's own hand and the language assertedly used by Olin in delivering the certificate, likely would demonstrate, in our view, there was the present intention to give and transfer the whole ownership and title of the stock to the asserted donee Sam. And, although the statute, Section 403.050 (requiring the endorsement, or a separate written assignment to transfer title to the certificate and the shares represented thereby) was not complied with at the time, the stated testimony of defendant and wife of the asserted circumstances of the delivery of the certificate might be said to have effectuated a completed gift in the sense that the donor acquired an equitable interest or title in the shares of stock with right in him of specific performance as against the corporation and the former holder, or his personal representative, to compel the former holder to endorse and the corporation to transfer the stock on its books. This, it seems, is the purport of Section 403.130, RSMo 1949, V.A.M.S.; Uniform Stock Transfer Act, 6 U.L.A., § 9. It has been written that an "exception to the general rule that a written assignment is necessary to pass title to stock exists in the case of a gift of the certificate, which is symbolic of a gift of the stock. It generally has been held that a valid gift, either inter vivos or causa mortis may be made by delivery of the certificate without written assignment. But there is some authority to the contrary. The donee without assignment does not get complete legal title to the stock, but, as between himself and the donor, he secures equitable title and some equitable and legal rights." Vol. 1, Transfer of Stock, Christy, 3d Ed., § 53; Whitney v. Nolan, 296 Mass. 419, 6 N.E.2d 386; In re Maijgren's Estate, 193 Misc. 814, 84 N.Y.S.2d 664; Reinhard v. Sidney B. Roby Co., 110 Misc. 152, 179 N.Y.S. 781.
It would be of little value here to pursue this discussion of the acquisition of an equitable title to shares of stock by gift incomplete because of failure to comply with statutory requirements for transfer of title. Neither is it necessary to consider plaintiff's contention that the trial court, in this probate court discovery proceeding, in ordering him to endorse the stock was erroneously exercising equitable power by affording relief in the nature of the remedy of specific performance. This because, considering the evidence as a whole, although also having in mind the trial court's findings on the conflicting verbal evidence, we find ourselves, in reviewing the whole of the evidence anew, compelled to the view that defendant's factual theory of a gift inter vivos is against the clear weight of the evidence.
Initially, the asserted doner's alleged method of attempting the transfer of the ownership of the certificate is scrutinized. It would seem that a capable, efficient person with a half century's active experience as the executive of a bank and who, the *483 evidence tends to show had supervised the formal transfer of corporate stock by endorsement, if he intended to give the stock to another would have simply utilized the form on the stock certificate provided and would have effectuated the transfer by endorsement.
Attending the occasion of the conference at the office of the judge of probatethe probate judge had been advised by the sons and grandson that they had agreed that plaintiff should be appointed administrator. In appointing the administrator, or in contemplating such appointment, we think it reasonable to say that usually the almost immediate attention of a judge of probate would be directed to the nature and value of the deceased's estate. It would have been the natural thing in our case for those present to defer to defendant for this information, inasmuch as defendant most of all the evidence shows was familiar with deceased's business affairs. Now considering the personalty admittedly possessed by deceased the day preceding his death, the testimony of plaintiff, Doyle and Dorris of what defendant said was in harmony with a theory that there had been no gift, and whatever defendant said would, as we have said, be in answer to an inquiry which a probate judge would usually or ordinarily make. Now we say we tentatively doubt the verity of defendant's testimony that no inquiry was made with the purpose of fixing the amount of the bond or as to "the value, and nature, extent or kind of property that he (Olin) had when he died," and we tentatively accept the testimony of plaintiff, Doyle and Dorris as to what defendant reported as to the value and extent and kind of property possessed by Olin, which report was entirely inconsistent with any theory that Olin had given away the shares of stock before he died. Now this tentative doubt we have expressed especially persists in view of the fact that the acting probate judge fixed the administrator's bond with corporate surety in in an amount something in excess of the amount which there was evidence tending to show defendant said would "cover it all," that is, including the shares of bank stock.
Turning now to the testimony of defendant and wife that the certificate was delivered to Sam sealed in the envelope with stated language thereon, we bear in mind that, according to the testimony of defendant's wife, counsel for defendant had had his attention called to the envelope, unsealed, only in the morning of the day of trial, and defendant formerly in answer to an interrogatory had stated he had no written evidence of a transfer of the stock. So we have but the verbal testimony of defendant and wife that the envelope ever contained the certificate in controversy here. We observe that the legend, "Olin Kies to Sam Kies," on the envelope, which had been opened when it was produced the very morning of the trial, in itself, gives no clue as to what the envelope had theretofore contained.
The evidentiary matters we thus far have mentioned might or might not be decisive we think, but they reasonably may be considered in theorizing on the whole of the evidence. And accepting the actuality of these permissible theories of reasoning we add and consider them together with the fact that defendant did not mention the asserted gift at any time to his kindred interested in Olin's estate, to the judge of probate, to the administrator of the estate, or to the appraisers including the appraiser Harper, who was an officer and associate of Olin (and of defendant) in the banking business, until defendant was seeking a transfer of the stock on the corporate books. We think this last-mentioned fact or circumstance evidenced a reluctance to forthrightly disclose the circumstances of the acquisition of possession of the certificate because of a consciousness that the actual circumstances of his acquiring the possession of it, whatever they were, did not support the alleged gift inter vivos.
*484 We have recognized that all the witnesses were interested witnesses, save possibly the witness Harper; and that the acting judge of probate is deceased. To be sure the witness, defendant's wife, spoke of dissension in the family, but we suppose this could cut both ways. Again examining Olin's will, operative as of the day of his death, we cannot say the several remainders respectively devised to defendant, to Dorris, and to Doyle were in real property of equal value, or approximately so, inasmuch as the transcript on appeal does not disclose the value of these several parcels of land; but, as we have said, the residuary clause of the will provided an equal division of the residue. On its face, the will discloses no inclination of Olin to prefer the one over the other son, or the grandson.
We think the converse evidentiary matters we have mentioned clearly outweigh the verbal testimony of defendant and wife, when the whole of the evidence is considered; and we hold that defendant did not sustain the burden of proving a gift inter vivos by convincing evidence.
The judgment should be reversed, and the cause should be remanded to the trial court with directions to enter an order and judgment that Certificate No. 555 and shares of corporate stock represented thereby are assets of the estate of Olin Kies, deceased, and such order and judgment of the trial court upon remand should be certified to the Probate Court of Harrison County for further order directing the delivery of possession of the certificate by defendant to plaintiff administrator.
It is so ordered.
COIL and HOLMAN, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.