Edward M. Horey, S.
The petition of the plaintiff, Sherman Smith, prays for a declaration of rights and interest in certain certificates of common stock of Texaco, Inc., Penzoil United, Inc. and Standard Oil Company to which both the plaintiff and the defendant claim title. The petition recites that the action is brought under SCPA 209 (subd 4) as well as under CPLR 3001 and that by virtue of SCPA 209 (subd 9).
In his petition the plaintiff asserts ownership to the securities by virtue of an alleged inter vivos gift allegedly made by the decedent, Harold Hicks, approximately three months prior to his death on November 2,1972.
The answer of the defendant, M. Eloyce Augustine, administratrix c. t. a. filed on behalf of the estate of Harold Hicks consists of a general denial of the allegations of the plaintiff and asserts that title to the securities is in the estate of the decedent.
The basic facts are these: On a Sunday afternoon in the latter part of the summer of 1972, four people were seated around a dining room table at the residence of Sherman Smith in the Town of Allegany, New York. They were: the plaintiff, Sherman Smith, his wife, Joann Smith and friends, David Hall and his wife, Dorothy Hall. The four were engaged in casual conversation at a time when the decedent, Harold Hicks, entered the room. Hicks had been an earlier dinner guest of the Smiths and had retired for a nap in a side room. *328 Upon entry Hicks announced that he was ready to have Smith drive him to his home. Smith arose, secured Hicks’ coat, and was about to help him put it on when Smith observed some papers protruding from Hicks’ pocket. Smith commented upon the possibility that the papers might be lost. An extremely brief conversation of not over three sentences ensued between Smith and Hicks. It was concluded by Hicks handing the papers to Smith who immediately placed them on a nearby table unopened. Hicks and Smith departed. Upon his return, Smith, together with his wife, examined the papers and discovered that they consisted of three certificates of common stock. They were respectively: a certificate representing 640 shares of common stock of Penzoil United, Inc. and 380 shares of common stock of Texaco, Inc. and a third certificate representing 3 shares of Standard Oil Company. Collectively, the certificates had a value of $31,500. The certificates were and are in the name of the decedent, Harold S. Hicks. They were and are unendorsed. The certificates were retained by Smith until the death of Harold Hicks some three months later on November 2,1972.
A two-day trial of the issues was had in Surrogate’s Court, Cattaraugus County, without a jury. For decision by the court is the question of whether or not the described transaction resulted in an inter vivos gift of securities.
A review of the applicable principles of law is first in order. Such review discloses that the transaction of gift is one resting on the volition of two parties, the donor and the donee. The mere fact of delivery of possession standing alone does not prove a gift. The alleged donor may have intended simply to constitute the deliveree his agent or bailee , to have custody and possession of the thing delivered, but not to exercise over it the rights of ownership. Unless, therefore, the intent to give title be proven clearly the transaction will not be sustained as a gift.
A gift moreover is a present passing of title. To be valid a gift must operate in praesenti. If the alleged donee does not receive a present interest in the subject matter, but only one to take effect in the future, the gift is abortive and unenforceable.
To constitute a gift then there must be both a coupling of an absolute and unequivocal intention by the donor to pass title and possession to the donee with an intention that passage of such title and possession will be done at once.
*329 It is thus readily understood that it is the donor’s intention that is paramount in determining whether a transaction is an inter vivos gift. (McCarthy v Pieret, 281 NY 407, 409.) The rule is easy of expression, but difficult in application. Generally no one factor or consideration is independently determinative of the issue. The question is properly resolved by a consideration of the totality of relevant evidence on those considerations which reflect objectively the subjective mind.
The status and relationship of the parties can be indicative of donative intent. In the instant case the proof of the plaintiff donee is that there had existed a warm friendship between the decedent and the donee’s father. This friendly relationship had been continued by the donee on a lesser scale after his father’s death. Plaintiff’s evidence is that he had extended periodic invitations to the decedent for dinner; that he had performed shopping errands on the decedent’s behalf; that he made inquiries concerning the decedent’s health and visited him during his last hospital confinement.
The defendant countered with proof that characterized the alleged donee’s conduct to the decedent as self-serving and overreaching. It was characterized by testimony of a waitress that on one occasion she found the decedent cowering in a restaurant booth admonishing her that if the plaintiff came by the waitress was to advise him that the decedent was not present. The reason given was "because all he [plaintiff] wants is my money”.
The court finds the referenced proof on a parity, i.e., equally unimpressive and unpersuasive.
More significant is the proof that the securities in issue had a market value of $31,500. The entire value of the decedent’s estate was valued in the petition for probate at no more than $50,000. In proceedings to fix a bond of the personal representative, it was valued by the guardian ad litem appointed by the court at $100,000. Accepting the larger figure of $100,000 as a reasonably estimated valuation, it still appears that the alleged gift would represent a substantial portion of all the decedent’s property. That fact, together with the fact that the decedent’s house was in a state of shocking disrepair, without heat, electricity or even water, coupled with the consideration that the decedent was in a state of ill health, was constantly unwashed and unkempt in appearance, was arrayed in clothing that was described as filthy and held together with one large safety pin, all collectively considered, form a background *330 of financial need and penurious habits that is not persuasive of generous giving.
Oral or written expressions of gift are relevant considerations of donative intent. In the case for decision there was only the abbreviated conversation that ensued between the time the certificates were observed protruding from the rear pocket of the decedent’s trousers and the time those certificates were handed to Smith. Only two witnesses testified to the conversation. One was the witness, David Hall. The other was the alleged donee’s wife, Joann Smith. Each conceded that they could not recall the precise words that were used by either Hicks or Smith. Attempts by both counsel to develop from these witnesses the substance of this important conversation lead to gradations of testimony ranging from recitations strongly supportive of intent to make a gift, to those indicative of delivery only for the purposes of safekeeping.
E.g., compare the following testimony of the independent witness, David Hall.
(Direct examination by Mr. Dwyer)
Q. What happened after he took them out of his pocket?
A. He gave them to Mr. Smith and said he wanted him to have them.
Q. What did Mr. Smith say?
A. Mr. Smith said that he didn’t want to take them and he should put them in a safe place.
Q. And then what did Mr. Hicks say, if anything?
A. He said he wanted Mr. Smith to have these for his own. He wanted to give them to him so that — for what he had done for him in the past.
Q. And did Mr. Smith respond to that? Was there any other conversation?
A. He said something about Mr. Hicks would have to sign them and Mr. Hicks said he wouldn’t sign them at this time.
(Cross examination by Mr. Kehoe)
Q. My question to you is did you not here about three minutes ago in response to my question state that keep, the word keep, was a possible word spoken by Mr. Hicks when he made the statement you keep them? Did you not just agree with that?
A. Yes sir, I did.
Q. All right. And that was in response to Mr. Smith’s suggestion to him that he put them or keep them in a safe place? Was that not so?
A. Yes.
Q. It could have been you keep them?
A. It could have been, yes sir.
Q. All right. And did you say also that when this was first said that Mr. Smith stated that he didn’t want to take them, is that correct?
A. I don’t recall what my exact words were, sir.
*331 Q. This was. .
A. It was to that effect, yes sir.
Q. All right. And then Mr. Smith and Mr. Hicks left, is that correct?
A. Yes sir.
Q. No other conversations now that you recall?
A. No.
The court finds the testimony concerning the statements made by the alleged donor and donee at the time of delivery to be equivocal and uncertain.
The reservation of the right to collect and the collection of dividends, or interest upon securities are also relevant considerations bearing on donative intent. (Matter of Early, 198 Misc 727, 732; Matter of Miller v Silverman, 247 NY 447, 450-451.) On these matters prior judicial determinations appear divided. It has been held that a reservation of dividends or income or interest by a donor is not to be regarded as necessarily diminishing or defeating a gift. (Young v Young, 80 NY 422, 431; Matter of Wright, 139 App Div 1; Flint v Ruthrauff, 26 App Div 624, affd without opn 163 NY 588; Matter of Humphrey, 191 App Div 291; Judson v Hatch, 171 App Div 246, 249; People’s Trust Co. v Dixson, 126 Misc 580, 581, affd on opn of Faber, J. 220 App Div 742.) Cases which hold to the contrary and stress the fact that with a reservation of income or dividends the alleged donee did not acquire all interest in, and title to the alleged gift are Curry v Powers (70 NY 212, 217) and Matter of LaFontaine (257 App Div 868, affd 281 NY 872).
In the case for decision there was no express reservation of dividends by the alleged donor. This matter was not mentioned at the time of delivery, nor later. Thus, the situation presented is not one where oral or written expression affirmatively indicates that what was intended was a gift of corpus (securities), but a reservation of income (dividends). Here, the alleged donor continued to collect the dividends and use them for his benefit. This was known to the alleged donee. More significantly, on occasion the alleged donee actually made deposits of the dividend checks in bank accounts to the credit of the alleged donor, or cashed them for the donor and on one or more occasions paid a gas bill for the donor from the proceeds. This to the court indicates acquiescence by the donee in at least one of the indicia of ownership on the part of the donor. The failure to object to the continuing registration of the title of the securities in the name of the donor evi *332 dences acquiescence by the donee in yet another indicium of ownership on the part of the donor.
The absence of an endorsement on the certificates of stock is a relevant consideration. (Matter of Maijgren, 193 Misc 814, 820; Orton v Tannenbaum, 194 App Div 214, citing with approval Herbert v Simson, 200 Mass 480.) Viewed independently, it must be considered that the absence of endorsement or assignment of securities argues against an intention to transfer title. The majority of cases decided appear to hold as a matter of law that if donative intent is otherwise present, the absence of an endorsement or assignment will not alone render a gift incomplete. The rationale of these cases appears to be that while the absence of endorsement may give rise to difficulties in effecting a transfer, it does not affect the title, at least as between the deliveror and the deliveree. (Gilkinson v Third Ave. R. R. Co., 47 App Div 472; Miller v Silverman, 247 NY 447; Matter of Hurd, 162 Misc 283; Matter of Maijgren, supra; Matter of Ruszkowski, 45 Misc 2d 380.) These decisions are consistent with the statutory provisions contained in section 8-307 and subdivision (32) of section 1-201 of the Uniform Commercial Code.
It is not the absence of an endorsement so much as the facts surrounding that absence that this court regards as significant. In the instant case, there was a request for an endorsement and a refusal. The request was made by the alleged donee simultaneously with the delivery of the securities to him. The evidence is undisputed that the answer of the alleged donor immediately made was that he did not want to make the endorsement at that time. The significance of this critical evidence is lost in argument of whether such endorsement was legally necessary or not. It makes no difference. Donative intent is not determined as a matter of law. It is resolved as a matter of fact. The importance of the refusal to endorse at the time requested, lies in the fact that it manifests the thought on the part of the donor that something additional was required to complete the gift and would have to be done in the future. Equally significant, the request for endorsement manifests the same thought on the part of the donee. In reviewing prior judicial determinations, and there are a host of them, the court has found no similar or counterpart factual situation. In the judgment of the court the requested endorsement and immediate refusal permits, if it does not compel, the finding that the decedent did not make *333 delivery with the intent of then parting with ownership, and the recipient did not accept delivery with the thought that he was immediately vested with the right to exercise full dominion over the securities.
As to the burden of proof, it was said in Matter of Kaminsky (17 AD2d 690, 691, app dsmd 12 NY2d 840) "He who attempts to establish title to property through a gift inter vivos as against the estate of a decedent takes upon himself a heavy burden which he must support by evidence of great probative force, which clearly establishes every element of a valid gift”. The rule in the Kaminsky case has been interpreted to mean direct proof of each element of the gift. (Matter of Kelsey, 29 AD2d 450, affd 26 NY2d 792; Matter of Scherzinger, 272 App Div 722, affd 298 NY 521, and more recently Lawless v Mortimore, 42 AD2d 1021.) The burden of proof here is upon the plaintiff who claims title as a donee. (Matter of Housman, 224 NY 525, 527; Matter of Booth, 215 App Div 516, 521; Matter of Canfield, 176 App Div 554, 557; Matter of White, 148 Misc 740, 741, and cases cited, and most recently Matter of Malysiak, 15 AD2d 586.) "The burden of proof upon a claimant against an estate, while no different than that imposed in any civil litigation (Ward v New York Life Ins. Co., 225 NY 314, 322) is subject, nevertheless, to closer scrunity. Matter of Van Alstyne, 207 NY 298”. (Lawless v Mortimore, 42 AD2d 1021, supra.)
The court finds that the plaintiff has not met the burden of proof. In the judgment of the court the evidence does not demonstrate an absolute and unequivocal intention on the part of the decedent to pass title to the alleged donee at the time of the delivery of the certificates, or at any subsequent time.
Decision is for the defendant.
The determination and declaration of rights and interests is as follows:
1. The transaction between the plaintiff, Sherman Smith, and the decedent, Harold Hicks, that occurred in the latter part of the summer of 1972 at the residence of Sherman Smith in the Town of Allegany, New York, and involved the delivery by the decedent to the plaintiff of Certifice No. SEA 202192 for 380 shares of Texaco, Inc. common stock, and Certificate No. SPM 5464 for 640 shares of Penzoil United, Inc. common stock and Certificate No. NS 79067 for three *334 shares of Standard Oil Company common stock, was not an inter vivos gift of those securities.
2. The afore-recited securities form a part of the assets of the estate of the decedent, Harold Hicks, and are to be distributed as provided in his last will and testament previously admitted to probate.