OPINION OF THE COURT
Harold Hyman, J.
The assignee for the benefit of creditors has filed an *256 "Amended Final Report and Account” following a hearing before this court based upon his initial report and account. Due to the lack of clarity in the initial account regarding substantial payments made to Gibralter Corporation of America (hereinafter Gibralter), Benalbea Realty Corp., and Central State Bank, this court, therefore, directed said hearing and thereafter a more specific report to be filed by the assignee which would clarify the afore-mentioned payments, and, also, payments made therein for and to the attorneys representing Gibralter, including attorneys’ fees.
From the "Amended Account and Report” submitted by the assignee, and the memorandum of law submitted by the attorneys for Gibralter in support of the attorneys’ fees they received from the assignee in connection with the legal services allegedly rendered by them in behalf of Gibralter in connection with Gibralter’s lien, it appears that the amount of attorneys’ fees received by them from the assignee was a very considerable one and, as such, is open to serious question and consideration.
The attorneys for Gibralter, in their memorandum, contend that their attorneys’ fees, 15%, were provided for in the financing agreement entered into by the assignor with their client, Gibralter, and were "reasonable and proper” and, therefore, (1) "not subject to review or modification by the court” and (2) that upon the assignor’s filing an assignment for the benefit of creditors, the entire indebtedness accelerated and became due and owing immediately.
With regard to the second contention of the attorneys, there is no need to find disfavor, for the assignee agreed to acceleration of payment. On the other hand, the court unequivocally disagrees with their first contention.
Considering the financing agreement to be valid, the attorneys maintain that the provision for payment by the debtor-assignor upon default in payment of "reasonable attorneys’ fees” is valid and therefore, their charges of 15% are inviolable and not subject to review or modification by the court. To this end the attorneys quote from the financing agreement which, in pertinent part, provides: "9. If we default hereunder * * * or if we fail to make payment * * * and in addition thereto upon the occurrence of any of the above contingencies, you are hereby given the unqualified right to retain counsel * * * (i) to protect your interest in this Security Agreement * * * (iii) to collect any money which may become due under *257 this or any other Security Agreement from us * * * If you retain counsel for any of the purposes aforementioned we agree to pay reasonable counsel fees, the amount of which is hereby expressly ñxed at a sum which shall be equal to ñfteen percent (15%) of the aggregate of the entire unpaid balance of our debt to you * * * and the amount thereof shall be added to the indebtedness secured by this Security Agreement and shall be secured by the lien”. (Emphasis supplied.)
Presumably to lend alleged further support to their position, the attorneys for Gibralter cite section 9-504 (subd [1], par [a]) of the Uniform Commercial Code which provides that a secured party, after default, may sell or otherwise dispose of the collateral given as security and upon such disposition, apply the proceeds to, among other things, "the reasonable attorneys' fees and legal expenses incurred by the secured party”. (Emphasis supplied.)
There is no question that present day public policy has caused juridical law to step beyond the former archaic principle of caveat emptor regarding liquidated damages, of which the payment of attorneys was and still is a part (Wasserbauer v Marine Midland Bank — Rochester, 92 Misc 2d 388), and has refused to enforce a liquidated damage provision which fixed damages in an amount "grossly disproportionate to the harm actually, or likely to be sustained”, by the nonbreaching party (Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516, 521-522; Wirth & Hamid Fair Booking v Wirth, 265 NY 214, 223). Otherwise, and under certain indicative circumstances of "gross disproportion”, an agreement to pay a fixed sum upon a breach of contract, is an agreement to pay a penalty, even though the parties have chosen to call it "liquidated damages”, and is unenforceable (Equitable Lbr. Corp. v IPA Land Dev. Corp., supra, p 522). To all intents and purposes a liquidated damage clause is merely an "estimate” made by the parties at the time of their entering into the agreement, as to the ultimate extent of the financial injury that the nonbreaching party may sustain, and provided that such damage is difficult, if not impossible, to calculate it, will be upheld provided that the clause is neither unconscionable nor contrary to public policy (Mosler Safe Co. v Maiden Lane Safe Deposit Co., 199 NY 479; Truck Rent-A-Center v Puritan Farms 2nd, 41 NY2d 420, 424); and, "In such cases, the contracting parties may agree between themselves as to the amount of damages to be paid upon breach rather than *258 leaving that amount to the calculation of a court or jury” (Truck Rent-A-Center v Puritan Farms 2nd, supra, p 424).
A liquidated damage provision has its basis in the principle of just compensation, not permissive to one to reap a windfall well above the actual harm he has sustained (Ward v Hudson Riv. Bldg. Co., 125 NY 230, 234-235) nor to permit parties, in their unbridled discretion, to utilize penalties as damages "would lead to the most terrible oppression in pecuniary dealings” (Hoag v McGinnis, 22 Wend 163, 166; see, also, Matter of Associated Gen. Contrs. N. Y. State Ch. [Savin Bros.], 36 NY2d 957, 961-962, dissenting opn; Truck Rent-A-Center v Puritan Farms 2nd, supra, pp 424-425).
In a proper case a provision in a contract which provides for a breaching party to pay the nonbreaching party’s attorney’s fees may not be unconscionable, but, on the other hand it very well may be; and, when the precise issue of value has been directly presented, fixation by the courts of the "reasonable value of attorneys’ fees” on a quantum meruit basis, has been required. To hold otherwise would be contrary to public policy because it would actually amount to the enforcement of a penalty (Matter of Mead v First Trust & Deposit Co., 60 AD2d 71, citing Equitable Lbr. Corp. v IPA Land Dev. Corp., supra; Scheible v Leinen, 67 Misc 2d 457, 460; Franklin Nat. Bank v Wall St. Commercial Corp., 40 Misc 2d 1003, affd 21 AD2d 878).
The fixed percentage "attorneys’ fee” is only viewed as a "maximum fee”, a "limitation” to which the "reasonable attorneys’ fee” which the creditor may charge is so limited, but then, only upon first proving the extent of the necessary legal services "actually rendered” (Matter of First Nat. Bank of East Islip v Brower, 42 NY2d 471, 474; Matter of Mead v First Trust & Deposit Co., supra). In similar vein see subdivision (2) of section 601 of the General Business Law which provides that, "No principal creditor * * * or his agent shall * * * (2) Knowingly collect, attempt to collect, or assert a right to any collection fee, attorney’s fee; court cost or expense unless such charges are justly due and legally chargeable, against the debtor”. (Emphasis supplied.)
What is more, it is to be observed that, "the debtor really [only] stands in the position of an indemnitor to the creditor, and that the creditor cannot recover from the debtor on this contractual position until he has incurred the expenses by paying his attorney (emphasis supplied) (Matter of Mead v *259 First Trust & Deposit Co., supra, p 78; 379 Madison Ave. v Stuyvesant Co., 242 App Div 567, 569, affd 268 NY 576; Colon v Automatic Retailers Assn. Serv., 74 Misc 2d 665; Jamaica Sav. Bank v Potter, 88 Misc 2d 415; Broadstreets v Parlin, 75 Misc 2d 662, 663; Swiss Credit Bank v International Bank, 23 Misc 2d 572).
The contention of creditor and their attorneys that the issue as to the propriety of the amount of attorneys’ fees chargeable not being subject to review by the court nor to modification by the court because the security-financing agreement allegedly fixes the fee at 15% of the unpaid balance due, and because section 9-504 (subd [1], par [a]) of the Uniform Commercial Code provides for an allowance of "the reasonable attorneys* and legal expenses incurred by the secured party (emphasis supplied)”, is to construe the law in archaic fashion and without allowing for the court’s inherent right of supervision of charging of attorneys’ fees as part and parcel of this State’s strong and unequivocal public policy against the private sector’s imposition of penalties (Matter of First Nat. Bank of East Islip v Brower, supra, pp 474-475). It is not intended, nor is it now to say, that attorneys’ fees may not nor should not be charged and paid. On the other hand, the standard is "reasonableness”, not exorbitance, if such there be. The statute itself (Uniform Commercial Code, § 9-504, subd [1], par [a]), provides for and sets the standard at being "reasonable.”
In the instant matter, this court has a duty to protect "all creditors” from any possible mistake or possible overreaching on the part of anyone when brought to its attention. The mere payment to Gibralter, through the medium of, or to, its attorneys, does not deprive this court under its inherent power, or the power granted to it by sections 15 and 16 of the Debtor and Creditor Law or its traditional authority, to supervise the charging of fees for legal services and to regulate the practice of law (Gair v Peck, 6 NY2d 97; cf. Judiciary Law, §§ 53, 90; art 15; Matter of First Nat. Bank of East Islip v Brower, supra, p 474) from examining into the propriety and reasonableness of attorneys’ fees paid upon a creditor’s claim or lien, whether it be secured or unsecured, nor to order and direct such creditor and/or its attorneys to return any amount found to have been excessive, that is, over and above its "reasonableness” (Matter of Morgan, 99 NY 145; Matter of Wiltse & Fromer, 5 Misc 105; Debtor and Creditor Law, § 15, subds [1], [8]).
*260 The court has examined the assignee’s amended account and report and finds therefrom a "possible”, even "probable” unreasonable charge by the creditor, Gibralter, or its attorneys for attorneys’ fees made and paid to it or to its attorneys in the instant matter. Therefore, to determine the amount of "reasonable attorneys’ fees” to which Gibralter or its attorneys were entitled, if any, a hearing will be held by this court at Special Term, Part 2, Room 67, of this courthouse, at 2:00 p.m. on March 21, 1978, so as to take evidence as to the amount of "attorneys’ fees” received by them from Gibralter or the assignee in connection with the collection of the principal due to Gibralter on its security agreement, and the propriety thereof.
To that end, Gibralter and its then receiving attorneys are directed to appear on the date and at the time herein specified and to produce all of their books, records, files, checks, attorneys’ bills and evidence of receipts of payment therefor, issued, made, paid or received by them in connection with the security agreement involved herein and the collections made thereon; and the said attorneys, who then represented Gibralter in connection with the collection of the principle indebtedness or the balance due thereon at the time of this assignment is also directed to produce all documents in their file, including all time sheets relevant to the services allegedly rendered by them in connection with the collection of the moneys due on the alleged indebtedness then due to Gibralter, and all bills issued by them for legal services allegedly rendered by them for and to Gibralter and the payments therefor received by them in connection with the foregoing.
If it be found necessary in order to secure compliance with the above directions, the assignee or the attorney for the assignee, may, shall, and he is hereby authorized to issue, subpoenas duces tecum to each of the foregoing.