OPINION OF THE COURT
Aaron D. Bernstein, J.
In this nonjury action, the plaintiff seeks to recover $1,861.74 in credit card charges, together with interest thereon, and $372.34 in attorney’s fees, plus costs and disbursements. Plaintiff alleges a cause of action on an account stated, based on purchases made pursuant to a retail installment credit agreement.
At the trial, the defendant objected to the admission into evidence of 69 "statements” which indicated that the defendant was indebted to the plaintiff in the sum of $1,861.74. In addition, the defendant argues that there was no agreement entered into between the parties wherein the defendant would be obligated to pay the plaintiff’s attorney’s fees. An employee of the plaintiff testified that credit cards were issued to the defendant in October, 1971, June, 1972, and October, 1973, and that a copy of a retail installment credit agreement, executed by the plaintiff accompanied each credit card. These agreements each state, in part: that "in the event of Cardholder’s insolvency, death, default in payment or breach hereunder, Cardholder’s entire outstanding indebtedness shall become immediately due and payable at Issuer’s option. If any amount due and payable hereunder for Retail Purchases is *783 referred for collection to an attorney who is not a salaried employee of Issuer, Cardholder agrees to pay an attorney’s fee of 20% of such amount (or such lesser attorney’s fee, if any), permitted by the law of the state in which Cardholder resides”.
Concerning the 69 "statements”, the plaintiff’s employee stated that each statement was prepared in the regular course of the plaintiff’s business, and was based on the information contained in one or more of the "hard copy” charge slips prepared by various retail sellers at the time that the defendant utilized his credit card.
In civil actions, attorney’s fees are incidents of litigation. Absent statutory authority or a contractual obligation, attorney’s fees are not recoverable (Empire Nat. Bank v Monahan, 82 Misc 2d 808; Weidman v Tomaselli, 81 Misc 2d 328, 329). At the outset, therefore, it is incumbent upon this court to determine whether there was a contract between the parties. Either the plaintiff or the defendant was at liberty to stipulate the means by which there was to be acceptance of any contemplated credit agreement. In the instant proceeding, the plaintiff took the initiative by providing in the body of the various retail installment credit agreements that "this Agreement shall not become effective as to Retail Purchases until Cardholder or a person authorized by him or her signs a sales slip evidencing a purchase”. Unquestionably, the acceptance of a paper which purports to be a contract may be indicated by conduct or acquiescence (Joseph v Atlantic Basin Iron Works, 132 NYS2d 671, 673, affd 285 App Div 1147; Barber-Greene Co. v Dollard, Inc., 239 App Div 655, affd 267 NY 545). Accordingly, the defendant’s use of the credit cards issued to him by the plaintiff is tantamount to conduct evincing an acceptance of the accompanying retail installment credit agreement and all of the terms contained therein.
Furthermore, the procedure utilized by the plaintiff is expressly provided for in the Retail Instalment Sales Act (Personal Property Law, § 401 et seq.). More particularly, section 413 (subd 11, par [c]) of the Personal Property Law states that: "[wjhere a financing agency enters into a credit agreement with a retail buyer for its own account, the credit agreement may consist of an agreement complying in all other respects with the provisions of this section, but executed only by the financing agency, together with a credit card issued by it to the retail buyer.”
*784 Section 413 (subd 11, par [e]) also provides that: "[a] financing agency enters into a credit agreement provided for in this subdivision in this state, for purposes of this article, if it delivers or mails in this state to the buyer a copy of the agreement executed by the financing agency.”
 In the above-described statutory language of section 413 (subd 11, par [e]), it is expressly stated that a retail installment credit agreement need only be executed by the financing agency. Therefore, the defendant’s contention that the credit agreement must be signed by both parties before it becomes effective is without merit. It is elementary that in its construction or application of a clear statute, a court may neither read in nor read out any provision or requirement (Matter of State Bank of Binghamton, 152 Misc 579, 587). Thus, where the words of a statute must be interpreted according to their natural and obvious meaning, and where terms employed therein are not ambiguous, extrinsic facts are not available to restrict authority plainly conferred by statute (Matter of Daniman v Board of Educ., 306 NY 532, rearg den 307 NY 806). Additionally, defendant’s reliance upon the case of Empire Nat. Bank v Monahan (82 Misc 2d 808, supra) for authority that the acceptance of a credit card does not bind the retail buyer to the terms of a retail installment contract, is misplaced. In that case, the plaintiff admitted that there was no retail installment credit agreement between the parties (Empire Nat. Bank v Monahan, supra, p 808). In the instant proceeding, however, there is no question that the plaintiff mailed executed copies of a retail installment credit agreement together with each credit card.
 It is evident, therefore, that there existed between these parties a valid and binding agreement, whereby the defendant would be obligated to pay attorney’s fees equal to 20% of his outstanding indebtedness. Subdivision 5 of section 413 of the Personal Property Law specifically provides that the retail installment credit agreement may provide for the payment of attorney’s fees not exceeding 20% of the amount due and payable under the credit agreement if it is referred to an attorney not a salaried employee of the seller or holder for collection. However, the 20% referred to in the statute is not a fixed fee but a maximum limitation (Broadstreets, Inc. v Parlin, 75 Misc 2d 662). The fixed percentage fee, therefore, is viewed only as a maximum fee, limiting the amount of reasonable attorney’s fees which the plaintiff may charge upon *785 proving the extent of the necessary services actually rendered (Matter of First Nat. Bank of East Islip v Brower, 42 NY2d 471; Matter of Mead v First Trust & Deposit Co., 60 AD2d 71; Matter of Coastline Steel Prods. (Goldhaber), 93 Misc 2d 255, 258). Based upon the preponderance of the credible evidence adduced at the trial, this court makes a finding that the reasonable value of the attorney’s fees actually rendered by Mr. Hirschfeld for the plaintiff is $372.34. The court is aware of the fact that the sum of $372.34 is equivalent to 20% of the defendant’s unpaid indebtedness. It should be noted however, that subdivision 5 of section 413 of the Personal Property Law does not foreclose the collection of a 20% attorney’s fee. In essence, it requires only that there be an appropriate demonstration that the quantity and quality of legal services actually rendered are such as to warrant, on a quantum meruit basis, that full percentage (Matter of First Nat. Bank of East Islip v Brower, supra).
Concerning the defendant’s objection to the admission into evidence of the 69 "statements”, CPLR 4518 (subd [a]) provides that: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter.”
 The court recognizes the requirement imposed by Johnson v Lutz (253 NY 124) that for a business record to be admissible it must be imparted by persons who were under a duty to impart such information. However, such requirement is not a bar to the admission of the above-described 69 "statements”, since it is clear to this court that the various retail sellers who prepared the "hard copies” of the credit card purchases were under a business duty to report the information accurately and subsequently forward them to plaintiff for reimbursement. Business records are deemed reliable because they are based on reports by persons whose routine business duty it is to perceive the facts and to transmit information concerning them to others engaged in the business (Richardson, Evidence [10th ed], § 299, p 273). It is axiomatic that the probability of trustworthiness which inheres in the records prepared by the retail sellers arises by virtue of the fact that *786 it is in their own interest to have the records truthful and accurate since these records are, in turn, relied upon when the retail sellers are reimbursed by the plaintiff.
Moreover, "The routine of modern affairs, mercantile, financial and industrial, is conducted with so extreme a division of labor that the transactions cannot be proved at first hand without the concurrence of persons, each of whom can contribute no more than a slight part, and that part not dependent on his memory of the event. Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine itself, and of the self-consistency of their contents. Unless they can be used in court without the task of calling those who at all stages had a part in the transactions recorded, nobody need ever pay a debt, if only his creditor does a large enough business.” (Massachusetts Bonding & Ins. Co. v Norwich Pharmacal Co., 18 F2d 934, 937.)
 In view of all of the circumstances surrounding the making of the "hard copies” of the credit card purchases, the court finds that the various retail sellers were under a business duty of sufficient degree to meet the mandates of Johnson v Lutz (253 NY 124, supra). In any event, the statute specifically provides that all other circumstances of the making of the memorandum or record including lack of personal knowledge by the maker, may be proved to affect its weight, but shall not affect its admissibility (CPLR 4518, subd [a]; Matter of Klausner, 192 Misc 790, 799-800). Accordingly, any evidentiary showing that the above-described statements have a low probative force will only be considered in deciding how much weight they will be given.
In the case at bar, this court finds that the plaintiff has sustained its burden in proving that the defendant is indebted to it in the sum of $1,861.74, for credit card purchases and that the reasonable value of the legal services rendered by the plaintiff’s attorney to date is $372.34.
The proof shows that the plaintiff introduced into evidence various statements which indicated that the defendant had utilized his credit card to make retail purchases in the sum of $1,861.74, and that no part of this amount had been paid. This establishes plaintiff’s cause of action for an account stated. The defendant did not call any witnesses on his behalf. Where a party fails to call any witnesses, the evidence already in the case will be construed most strongly *787 against the party who might have called the witness to contradict or explain the evidence (Milo v Railway Motor Trucking Co., 257 App Div 640). Thus, where a party withholds evidence in his possession or control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits (Noce v Kaufman, 2 NY2d 347, 353).
Accordingly, judgment is granted to the plaintiff in the amount of $2,234:08, with interest from December 16, 1976, plus costs and disbursements.