OPINION OF THE COURT
John Austin, J.
The risks associated with the malady known as acquired immune deficiency syndrome (hereinafter AIDS) raise a novel question in this paternity proceeding. Petitioners are the Commissioner of Social Services and the mother of Andrea Michelle Smyth, born out of wedlock October 14, 1983, at Glens Falls, New York. They seek a declaration that respondent Boyce Rawson is the father of said child, and an order of support.
The parties were directed by the court to show cause why an order should not be made requiring the mother, child and respondent to submit to one or more blood genetic marker tests. Petitioners had applied for such an order, and respondent raised a number of objections thereto. Legal memoranda, submitted by the parties, are before the court. As to the AIDS-based contention of respondent, a hearing was conducted February 28,1985, to determine whether said objection was well founded. The issue there addressed was whether one who has blood removed for paternity testing is at increased risk of contracting AIDS when his work brings him into contact with persons suffering from *932 AIDS or with persons in groups known to have a high incidence of AIDS. No question was raised as to the general practice of making such tests by a venipuncture process performed by a qualified physician or by a laboratory approved by the New York State Department of Health.
Respondent, a correction officer at Clinton Correctional Facility at Dannemora, testified in opposition to an order for such testing. He stated that his duties, which require direct contact with a prison population, subject him to a high risk of contracting AIDS, a fatal disease for which there is no known cure. He testified that certain inmates at the Clinton facility suffer from AIDS and that the correction officers use special protective clothing to minimize contact with them. He testified that AIDS is prevalent among particular groups, including homosexual men and persons who use drugs by injection, and that such groups are well represented in the prison population.
Testifying for petitioners was James F. Mohn, M.D., who serves as Director of the Blood Group Research Unit at State University of New York School of Medicine at Buffalo, as Chairman of the New York State Council on Human Blood and Transfusion Services, and as a member of the New York State AIDS Institute Advisory Council. Dr. Mohn testified that inasmuch as the skin seals itself immediately upon the performance of venipuncture, there results no open wound through which the disease might be transmitted to the punctured individual. It was his considered medical opinion that respondent would not be at risk of contracting AIDS by submitting to a paternity blood test, based upon the fact of sealing and the medical data demonstrating methods of transmission of the disease.
Since the expert evidence before the court clearly and convincingly indicates that the taking of a blood sample from respondent by venipuncture would not jeopardize his health, such testing will be ordered by this court pursuant to Family Court Act § 532.
Respondent’s other objections to such testing are insufficient. His contention that he cannot be compelled to submit to such tests is overcome by Family Court Act § 532 (a) which clearly grants the court authority to order the same, either on its own motion or on the motion of any party. No constitutional infirmity is found in the statute for the reason that any evidence flowing from the testing would not be testimonial or communicative in nature (Schmerber v California, 384 US 757), and, additionally, a court “should not strike down a statute as unconstitutional unless such statute clearly violates the Constitution” *933 (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [a], p 307).
As to respondent’s contention that compelling him to submit to blood genetic marker tests constitutes a violation of his 4th Amendment protection against unreasonable search and seizure, the court simply notes that any such compulsory administration has been held to be “consistent with the respondent’s Fourth Amendment rights” (Matter of Commissioner of Social Servs. v O’Neil, 94 AD2d 480, 482).
The allegation that compelling respondent to submit to a blood test violates his constitutional right of privacy is also unsubstantiated inasmuch as the administration of such a test amounts to but a minimal intrusion, i.e., the withdrawal of a very small amount of blood under laboratory conditions, while there exist compelling reasons which justify such intrusion (see, Matter of Jane L. v Rodney B., 108 Misc 2d 709). Respondent’s position that the administration of a blood test constitutes an unprivileged and unjustifiable assault and battery upon his person is found to be insufficient for the same reasons.
Respondent’s contention that he cannot be compelled to submit to a blood test because the results thereof conclusively resolve the issue of paternity in a laboratory and not in a court of law is without basis. Family Court Act § 532 clearly states that the results of such testing are to “aid” the court in its determination of whether paternity exists. The language used by the Legislature is clear, and the court will follow that mandate.
Finally, respondent contends that no adverse inference or presumption should be drawn against him for his refusal to submit to any blood genetic marker tests. The court is convinced, however, that such an inference or presumption is entirely appropriate. It is an established evidentiary principle that the trial court may infer from a party’s failure to produce evidence solely within his control that such evidence, had it been produced, would be most favorable to the other party (Matter of Molly M. v Edwin F., 118 Misc 2d 768; Noce v Kaufman, 2 NY2d 347; Chase Manhattan Bank v Hobbs, 94 Misc 2d 780). Although Family Court Act § 532 does not provide a remedy for noncompliance with court-ordered blood genetic marker tests, as was stated in Matter of Molly M. v Edwin F. (supra, p 769) “the Legislature could not have intended to render the courts impotent in the face of failure to comply with [such] an order”. Accordingly, it is held that should the respondent refuse to submit to the blood genetic marker tests, as ordered, he will be withholding evidence which is solely within his control; *934 therefore, upon the trial of this matter, the petitioners shall be permitted to introduce evidence of respondent’s failure to submit to such tests and, furthermore, the court will find that the results of those tests would have been most favorable to them.
The within constitutes the decision of the court. An order for blood genetic marker testing will be issued by the court for distribution herewith.