FILED
07/26/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 27, 2017 Session

## IN RE MYA H.

**Appeal from the Chancery Court for Shelby County**
**No. CH-14-1729-2  Jim Kyle, Chancellor**

_____

### No. W2016-01285-COA-R3-PT

_____

Presumptive Legal Father appeals the trial court's finding that the presumption of parentage had been rebutted without the benefit of an evidentiary hearing and his resulting dismissal from this termination of parental rights proceeding. Because the statute relied upon to dismiss Presumptive Legal Father from this proceeding is inapplicable to the case-at-bar, we reverse the trial court's decision to dismiss Presumptive Legal Father. We also vacate the trial court's finding that the presumption of parentage had been rebutted and remand for an evidentiary hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and BRANDON O. GIBSON, JJ., joined.

James Franklin, Jr., Memphis, Tennessee, for the appellant, Fred E.

Kevin W. Weaver, Cordova, Tennessee, for the appellee, Life Choices of Memphis, Inc.

### OPINION

### Background

On November 26, 2014, Life Choices of Memphis, Inc. ("Life Choices") filed a petition to terminate the parental rights of Fred E. ("Appellant") and Unknown Father to Mya H. ("the child"), born in October 2014.[1]  Because the child was born to the marriage of Appellant and Jennifer H. ("Mother"), Appellant was presumed to be the legal father

_____

[1] In cases involving termination of parental rights, it is the policy of this Court to remove the names of minor children and other parties in order to protect their identities.

of the child. Appellant's name, however, was not listed on the child's birth certificate. The petition alleged that Mother had surrendered the child to Life Choices on November 13, 2014, and that Appellant was currently incarcerated. The petition alleged several grounds for termination against both Appellant and Unknown Father, including that both men abandoned the child by willfully failing to visit Mother during the pregnancy, abandonment by willful failure to pay support during the pregnancy, failure to seek visitation with the child after her birth, and failure to manifest a willingness and ability to assume custody of the child.

On November 26, 2014, the same day the termination petition was filed, Life Choices filed a motion requesting permission to serve both Appellant and Unknown Father by publication. The motion was accompanied by an affidavit of due diligence. Therein, counsel for Life Choices stated that Mother indicated that Appellant was not the biological father of the child because their physical relationship ended in 2004. Because of "her lifestyle" thereafter, Mother informed Life Choices that she did not know who the Father of the child was or the names of "any of these men" that could potentially be the child's biological father. The affiant further stated that publication on Unknown Father was being sought because no genetic testing had been performed on Appellant. On December 8, 2014, the trial court entered an order allowing publication on Unknown Father. It appears, however, that Appellant was served "by process service." As such, on December 12, 2014, Appellant sent a letter to the trial court indicating that he wanted to oppose the termination of his parental rights to the child. The trial court thereafter appointed an attorney to represent Appellant.

Having served Unknown Father by publication, Life Choices filed a motion for default judgment against him on February 9, 2015. The trial court granted the motion for default judgment on February 13, 2015. On April 23, 2015, Appellant, by and through his counsel, filed an answer to the termination petition, generally denying that he had abandoned the child. Additionally, Appellant's answer specifically stated that Appellant was the presumptive legal father of the child.

On May 29, 2015, Life Choices filed a motion to compel Appellant to participate in genetic testing. The motion further asked that a guardian ad litem be appointed for the child. In September 2015, two identical orders were entered requiring Appellant to submit to genetic testing. Appellant refused to consent to the genetic testing. As a result, on October 29, 2015, Life Choices filed a motion to rebut the presumption of parentage and "disestablish [Appellant] as legal father" of the child.[2]

---

[2] The statutes at issue in this case variously use "presumption of parentage" and "presumption of paternity" to describe the presumption at issue in this case. *See* Tenn. Code Ann. § 36-2-304 (using the phrase "presumption[] of parentage"); Tenn. Code Ann. § 36-1-102(28)(C) (using the phrase "presumption of paternity"). Unless involving a direct quote, we choose to utilize the term contained in section 36-2-304, as section 36-1-102(28)(C) is inapplicable in this case, as discussed in detail, *infra*.

Life Choices' motion was heard and granted on November 13, 2015, without an evidentiary hearing. By order of December 2, 2015, the trial court concluded that "completion of genetic testing is an appropriate action to rebut a presumption of parentage" and Appellant's refusal to submit to such testing "rebuts his presumption of parentage by a preponderance of the evidence." In the meantime, trial was set for May 18, 2016.

On April 18, 2016, however, Life Choices filed a motion to dismiss Appellant as a party based upon newly enacted Tennessee Code Annotated section 36-1-102(28)(C), discussed in detail, *infra*. At the May 2, 2016 hearing, Life Choices' counsel relied upon the trial court's previous finding that the presumption of parentage had been rebutted. Appellant, however, expressed his desire to be included in the proceedings as the legal parent of the child based upon the presumption of parentage and the fact that no other father was ever located. The trial court delayed its ruling on the motion for ten days to allow Appellant time to complete genetic testing. Because Appellant still refused genetic testing, by order of May 18, 2016, the trial court dismissed Appellant as a party from the termination action. The termination proceedings were ultimately completed, and Appellant thereafter appealed to this Court.

## Issue Presented

Appellant raises a single narrow issue in this case, which is taken from his brief: "Whether it was reversible error for the [trial] [c]ourt to rebut the presumption of paternity finding that a preponderance of the evidence burden of proof had been met, without having an evidentiary hearing?" After our review, we agree that the trial court erred in this case.

## Discussion

### I.

This case stems from a termination of parental rights proceeding. In the typical case, the party seeking termination of a parent's parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. This standard of proof applies regardless of whether the parent is a legal parent, a presumptive legal parent, or merely a putative biological father. *See* Tenn. Code Ann. § 36-1-102(28)(A) (defining a legal

parent as, *inter alia*, the biological mother of the child and "[a] man who is or has been married to the biological mother of the child if the child was born during the marriage or within three hundred (300) days after the marriage was terminated"); Tenn. Code Ann. § 36-2-304 (defining a presumptive legal parent as, *inter alia*, a man married to the child's mother at the time of the child's birth or "within three hundred (300) days after the marriage is terminated"); Tenn. Code Ann. § 36-1-117(c) (defining a putative father as, *inter alia*, a biological father recorded on the child's birth certificate as the child's father). Rather, the substantive difference between a legal parent and a putative biological father in this situation generally only involves the grounds for termination that may be alleged. *Compare* Tenn. Code Ann. § 36-1-113(g)(1–8, 10)(outlining the grounds for termination as to legal parents), *with* § 36-1-113(g)(9)(outlining the grounds applicable to putative fathers).[3] Here, there is no dispute that Appellant was married to Mother at the time of the child's birth and therefore, at the time the termination petition was filed, qualified as both a legal parent and a presumptive legal father in this case.

In 2016, however, the Tennessee General Assembly created a new distinction between legal parents and mere presumptive legal fathers in the termination of parental rights context. *See* 2016 Tennessee Laws Pub. Ch. 636 (S.B. 2531), eff. March 23, 2016. Specifically, Tennessee Code Annotated section 36-1-102(28)(C) now provides that where a presumed father's "presumption of paternity" is rebutted, "the man shall no longer be a legal parent for purposes of this chapter and no further notice or termination of parental rights shall be required as to this person[.]"[4] Unlike the grounds for termination, which must be proven by clear and convincing evidence, only a preponderance of the evidence is required to rebut the presumption of parentage. Tenn. Code Ann. § 36-2-304(b)(3). In order to meet this burden, a party may seek to rebut the presumption of parentage "in an appropriate action." Tenn. Code Ann. § 36-2-304(b)(1). Because this issue is a question of fact, we review a trial court's finding that the presumption of parentage has been rebutted de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). For the evidence to

---

[3] Prior to March 2016, under the previous version of this statute, there was some question regarding whether these additional grounds were applicable to putative fathers. *See **In re Bernard T.***, 319 S.W.3d 586, 599 (Tenn. 2010) (citing ***In re D.A.H.***, 142 S.W.3d 267, 272–73 (Tenn. 2004)) ("The grounds for termination in Tenn. Code Ann. § 36–1–113(g)(9) cannot be used to terminate the rights of a person who is a child's biological parent, legal parent, or putative biological father at the time the termination petition is filed."). *But see **In re Dixie M.M.***, No. M2012-01226-COA-R3-PT, 2012 WL 4474155, at *8 (Tenn. Ct. App. Sept. 27, 2012) (affirming the trial court's termination of the putative father's parental rights on the ground of failure to seek reasonable visitation with the child pursuant to Tennessee Code Annotated section 36-1-113(g)(9)(A)(iii)). On March 23, 2016, the legislature amended the wording of the statute to explicitly state that these additional grounds applied to "the putative father of the child." *See* 2016 Pub. Acts, c. 636, § 5, eff. Mar. 23, 2016. This amendment did not take effect until after the termination petition at issue was filed. We cite the current version of the statute merely to illuminate the current state of the law. The change in the statute is not relevant to the issue on appeal.

[4] Only a man's status as a "legal parent" may be rebutted under section 36-2-304. *See* Tenn. Code Ann. § 36-1-102(28)(C).

preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *4215 Harding Road Homeowners Ass'n. v. Harris*, 354 S.W.3d 296, 305 (Tenn. Ct. App. 2011); *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000).

Although not argued by the parties in this case, there is a significant issue that this Court must address—the applicability of the statutory provision relied on by the trial court to dismiss Appellant, which provision was not enacted until after this termination petition was filed. In other situations, this Court has addressed similar issues *sua sponte*, as we do now. *See In re Braxton M.*, No. E2016-02172-COA-R3-PT, 2017 WL 2859806, at *13 (Tenn. Ct. App. July 5, 2017) (addressing the applicability of an amended statute governing grounds for termination notwithstanding both parties' failure to argue that issue on appeal based on "the fundamental constitutional interest involved").

Here, as noted above, the termination petition at issue was filed on November 26, 2014. The statutory provision relied upon by the trial court to dismiss Appellant from the termination proceeding was not enacted until over a year later, on March 23, 2016. *See* 2016 Tennessee Laws Pub. Ch. 636 (S.B. 2531), eff. March 23, 2016. This Court has recently held that section 36-1-102(28)(C) may not be applied retroactively to a termination petition filed before the effective date of the amendment. *See In re Francis P.*, No. E2016-02493-COA-R3-PT, 2017 WL 2733793 (Tenn. Ct. App. June 26, 2017). In *In re Francis*, like in this case, the termination petition at issue was filed prior to the enactment of the statutory provision allowing dismissal of a presumptive legal father after the presumption of parentage had been rebutted. *Id.* at *1–*2. The trial court nevertheless relied upon the language of section 36-1-102(28)(C) to terminate the rights of the child's presumptive legal father. *Id.* at *2.

We concluded, however, that the trial court erred in relying on section 36-1-102(28)(C) because that provision had not been enacted until after the termination petitions had been filed. *Id.* at *9. We further noted that, in order to apply section 36-1-102(28)(C), the "trial court, in essence, applied subsection (C) retrospectively." *Id.* We explained:

> Pursuant to the Tennessee Constitution, "no retrospective law, or law impairing the obligations of contracts, shall be made." *See* Tenn. Const. art. 1, § 20; *In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004). Therefore, "statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise." *In re D.A.H.*, 142 S.W.3d at 273 (citing *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998)).

Upon review, we determine that the trial court erred in applying subsection (C) retrospectively. As the Supreme Court noted in ***In re D.A.H.***, retrospective application is reserved for certain types of statutes:

> Statutes deemed remedial or procedural apply retrospectively to causes of action arising before such acts became law and to suits pending when the legislation took effect.
>
> A procedural or remedial statute is one that does not affect the vested rights or liabilities of the parties. A procedural statute is one that addresses the mode or proceeding by which a legal right is enforced. Remedial statutes are defined as "legislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained . . . ."

***Id.*** (quoting ***Nutt v. Champion Int'l Corp.***, 980 S.W.2d 365, 368 (Tenn. 1998)). In general, a statute is procedural "if it defines the . . . proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right." ***Sundquist***, 2 S.W.3d at 923 (citing ***Kuykendall v. Wheeler***, 890 S.W.2d 785, 787 (Tenn. 1994)). Similarly, "[a] statute is remedial if it provides the means by which a cause of action may be effectuated, wrongs addressed, and relief obtained." ***Id.*** (citing ***Dowlen v. Fitch***, 264 S.W.2d 824, 826 (Tenn. 1954)). However, "even a procedural or remedial statute may not be applied retrospectively if it impairs a vested right or contractual obligation in violation of [Tennessee Constitution] article I, section 20." ***Id.*** at 923–24. A "vested right" is defined as a right which "is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice." ***Id.*** at 923 (quoting ***Morris v. Gross***, 572 S.W.2d 902, 905 (Tenn. 1978)).

***In re Francis***, 2017 WL 2733793 at *9–10. We thereafter reiterated several factors outlined by the Tennessee Supreme Court for "'determining whether a retroactive statute impairs or destroys vested rights,'" including "'whether the retroactive provision gives effect to or defeats the bona fide intentions or reasonable expectations of affected persons[.]'" ***Id.*** at *10 (quoting ***Sundquist***, 2 S.W.3d at 924). Finally, we noted that the Tennessee Supreme Court previously held that:

> [A]n amendment regarding the statutory grounds for termination of parental rights, if applied retrospectively, would cause the father to lose his constitutional and vested rights as a parent. Therefore, the Court held that pursuant to article 1, section 20 of the Tennessee Constitution, the amendment could not be applied retroactively.

*In re Francis*, 2017 WL 2733793 at \*10 (footnote omitted) (citing *In re D.A.H.*, 142 S.W.3d at 274). Based upon the "factual similarities" between the situation in *In re D.A.H.* and the facts in *In re Francis*, we held that section 36-1-102(28)(C) likewise could not be applied retroactively. We agree with the sound reasoning expressed in *In re Francis* regarding the retrospective application of section 36-1-102(28)(C). We therefore likewise conclude that the trial court erred in applying section 36-1-102(28)(C) retroactively to this case. Because neither the motion to dismiss nor the order of dismissal cite any other bases for the dismissal of Appellant from this termination of parental rights proceeding, we reverse the trial court's order dismissing Appellant as a party. Given that Appellant was not properly dismissed and therefore remained a proper party to this termination proceeding, we must also reverse the trial court's May 20, 2016 order terminating all parental rights to the child at issue.

## II.

Although the dismissal of Appellant was not proper in this case, the inapplicability of section 36-1-102(28)(C) does not negate Life Choices' ability to institute "an appropriate action" to rebut Appellant's presumption of parentage under section 36-2-304(b), for whatever purpose that action may serve.[5] *See generally* Tenn. Code Ann. § 36-2-304(b); *In re T.K.Y.*, 205 S.W.3d 343, 352 (Tenn. 2006) ("Viewing the parentage, adoption and termination statutes as a whole, and in light of the constitutionally-protected rights of biological parents, however, our view is that the rights of the biological father are superior.").[6] Under section 36-2-304(b), however, Life Choices was required to rebut the presumption of parentage by a preponderance of the evidence. From our review of the record, however, no evidence was actually presented to the trial court on this issue.

While there is no dispute in this appeal that Father failed to participate in genetic testing as ordered by the trial court, the record simply contains no proof presented to the trial court of this fact. Life Choices' motion to rebut the presumption of parentage is not accompanied by any documents or affidavits, nor is it a sworn petition. Unsworn allegations are not evidence. *See Washington v. Tennessee Dept. of Corr.*, No. 01A-01-9603-CH-00131, 1996 WL 334359, at \*1 (Tenn. Ct. App. June 19, 1996) ("Unsworn allegations of fact in pleading or brief do not create an issue as to facts shown by sworn evidence."). Likewise, counsel for both parties informed the trial court of Appellant's refusal; the record, however, contains no stipulations by the parties of this fact, nor any testimony concerning Appellant's refusal. Tennessee courts have repeatedly held that statements of counsel are not evidence. *See, e.g.*, *Elliott v. Cobb*, 320 S.W.3d 246, 250

---

[5] During one hearing in the trial court, counsel for Life Choices stated: "[U]nder 36-2-304 . . . [u]nfortunately . . . at that time there was no mechanism that if you rebutted the presumption . . . you still had a, quote, legal father under the adoption statute that you still couldn't do anything with." Counsel explained, however, that the 2016 amendment to section 36-1-102 allowed Life Choices to pursue dismissal of Appellant.

[6] We note that no other purported father actually participated in these proceedings.

(Tenn. 2010) ("[S]tatements and arguments of counsel are neither evidence nor a substitute for testimony.") (citing *Metro. Gov't of Nashville & Davidson Cnty. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977); *Hathaway v. Hathaway*, 98 S.W.3d 675, 681 (Tenn. Ct. App. 2002)). Finally, the record also contains an affidavit of due diligence from Life Choices, detailing the facts leading Life Choices to believe that Appellant was not the biological father of the child. Again, this affidavit was not entered by stipulation of the parties or through appropriate testimony.[7]

Even assuming, however, that the trial court had appropriate evidence from which to find that Appellant refused to take part in genetic testing, we are troubled by the trial court's refusal to entertain other evidence on this issue. To be sure, nothing in section 36-2-304(b) specifies that the refusal to submit to genetic testing, standing alone, would conclusively rebut the presumption of parentage. We can certainly discern how an adverse inference may be taken in proper circumstances when a party refuses to participate in ordered genetic testing. *See State Dep't of Children's Servs. v. F.R.G.*, No. E2006-01614-COA-R3-PT, 2007 WL 494996, at *12 (Tenn. Ct. App. Feb. 16, 2007), *perm. app. denied* (Tenn. May 21, 2007) (holding that a trial court drawing an adverse inference from the parent's refusal to testify in a termination of parental rights proceeding was not unconstitutional)); *In re Chloe R.P.*, No. E2010-01257-COA-R3-PT, 2011 WL 578534, at *3 (Tenn. Ct. App. Feb. 17, 2011), *perm. app. denied* (Tenn. May 5, 2011) (same); *see also Dep't of Revenue v. B.P.*, 412 Mass. 1015, 1016, 593 N.E.2d 1305, 1307 (1992) (allowing an adverse inference where a father refused to submit to genetic testing); *M., on Behalf of S. v. R.*, 127 Misc. 2d 931, 933, 487 N.Y.S.2d 685, 688 (N.Y. Fam. Ct. 1985) (same); *c.f.* Tenn. Code Ann. § 36-5-2316, cmt. (noting that the Uniform Interstate Family Support Act's express provision allowing an adverse inference where a party refuses to testify in a civil hearing may also support a related rule "that refusal to submit to genetic testing may be admitted into evidence and a trier of fact may resolve the question of parentage against the refusing party on the basis of an inference that the results of the test would have been unfavorable to the interest of that party"). Such an inference, however, would generally not be conclusive as to the fact at issue. *See Nat'l Life & Acc. Ins. Co. v. Eddings*, 188 Tenn. 512, 520, 221 S.W.2d 695, 698 (1949) (holding that an adverse inference "does not amount to substantive proof which can be substituted for a fact required to make out his adversary's case"); Tenn. L. of Evid. 3.01[2][b] (describing an inference as "permit[ting], but [] not requir[ing], the jury [or fact-finder] to find a 'presumed' fact"). Rather, the opposing party is typically permitted to offer "contrary proof" on the issue. Tenn. L. of Evid. 3.01[2][b].

---

[7] The affidavit of due diligence contains several statements purportedly made by Mother concerning the conception of the child. Because no evidentiary hearing was ever held, Father was not permitted to object to these statements on the basis of hearsay or to cross-examine Mother regarding these statements.

Here, Appellant was not permitted to offer any contrary proof in an attempt to thwart Life Choices' effort at rebutting his presumption of parentage. Indeed, the trial court held no evidentiary hearing, and no proof was taken. Clearly, with no actual evidence before it, the trial court's decision that the presumption of parentage had been rebutted is not supported by the preponderance of the evidence. Other courts in similar circumstances have upheld a party's attempt to rebut the presumption of parentage only where an evidentiary hearing took place or the parties entered into stipulations concerning the proof. *See In re T.K.Y.*, 205 S.W.3d at 346, 352 (indicating that one presumptive legal father's parentage had been rebutted where the parties stipulated to the admissibility of evidence concerning the biological father of the child). Based upon the lack of evidence before the trial court, we conclude that the evidence in the record preponderates against the trial court's finding that the presumption of parentage had been rebutted by a preponderance of the evidence. We therefore vacate the trial court's judgment and remand for an evidentiary hearing on this issue.

## Conclusion

The judgment of the Shelby County Chancery Court is reversed in part, vacated in part, and remanded for further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellee Life Choices of Memphis, Inc., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE